914 P.2d 1011 (1993)
121 N.M. 507
Bruce BUFFETT, for himself and as Personal Representative of the Estate of Boyd Buffett, deceased, Plaintiff-Appellant,
v.
Frank JARAMILLO, Fabian Mascarenas, Individually and as Deputy Sheriff of Taos County, and Martin Vargas, and Albino Chacon, d/b/a Los Compadres Supper Club, Defendants-Appellees.
No. 11759.
Court of Appeals of New Mexico.
May 25, 1993.
Certiorari Granted September 13, 1993.
Turner W. Branch, Branch Law Firm, Rudolph B. Chavez, Albuquerque, for plaintiff-appellant.
John L. Lenssen, Lenssen and Mandel, Santa Fe, for defendant-appellee Fabian Mascarenas.
Harold Worland, Albuquerque, for defendant-appellee Martin Vargas.
Robert S. Skinner, Raton, for defendant-appellee Albino Chacon.

OPINION
ALARID, Judge.
Plaintiff appeals the trial court's judgment notwithstanding the verdict (judgment N.O.V.) following a jury trial which denied all recovery in a wrongful death action. Plaintiff argues several issues on appeal, contending the trial court erred in (1) failing to exclude jurors where voir dire revealed them to be prejudiced; (2) failing to order a new trial where the jury verdict apportioning fault equally among one of the Defendants, Decedent, and the non-party driver was not supported by evidence; (3) failing to order a new trial where the jury determined Decedent's life to have no worth; (4) admitting evidence of the blood alcohol levels of Decedent and the non-party driver of the car in which Decedent was riding when killed; and (5) failing to order a new trial where Defendants violated the trial court's order on Plaintiff's motion in limine.
Because we find errors in the presentation of evidence to the jury regarding intoxication and in the trial court's use of a special verdict jury instruction regarding assignment of liability, we remand for a new trial.

FACTS and BACKGROUND
This appeal concerns the all too frequent and tragic problem of automobile accidents and alcohol. In the morning hours of October 19, 1985, Plaintiff's son, Boyd Buffett (Decedent), 24, was a passenger in a car travelling south on N.M. Highway 3. The car he was riding in was driven by Peri Ann Denena (Denena). Witness testimony established that a northbound vehicle, driven by Defendant Frank Jaramillo, swerved suddenly into Denena's lane and struck her car nearly head-on. The impact injured Denena *1012 and killed Decedent. Denena is not a party to this action.[1]
A jury trial was held in Taos County District Court. In a motion in limine, motion for directed verdict at the close of all evidence, and again in a motion for a new trial following the jury verdict, Plaintiff asserted substantial evidence did not support the submission of a special verdict form permitting the jury to apportion fault between Defendants and the occupants of the Denena vehicle. The jury returned the special verdict form apportioning fault equally between Jaramillo, Denena, and Decedent, and awarded zero damages. The jury found no liability on the part of any other Defendants. The trial judge corrected the amount of damages to $1037.73 in a judgment N.O.V., the amount of Decedent's funeral costs. Plaintiff moved for a new trial notwithstanding the verdict, which the trial court denied.

DISCUSSION
Approximately eight hours after the accident, the state police obtained a search warrant to perform a blood alcohol test on Denena. Denena's blood samples and Decedent's autopsy report both indicated consumption of alcohol in the hours preceding the accident. In addition, Decedent's autopsy report indicated the presence of THC, the active ingredient in marijuana.
Before trial, Plaintiff filed a motion in limine requesting, inter alia, that all evidence regarding the intoxication of both Denena and Decedent, and the level of THC present in Decedent be excluded at trial. Plaintiff argued that the introduction of intoxication of Denena and Decedent would be irrelevant and would "essentially be prejudicial to the case and divert the true issues, being Frank Jaramillo's intoxication, Fabian Mascarenas' duty to take reasonable steps to prevent him from driving, the sale of alcohol to Frank Jaramillo when he was intoxicated by Martin Vargas at Los Compadres...."
Plaintiff stressed that admission of the test results, in the absence of other evidence of proximate causation, would only serve to unfairly prejudice the jury under SCRA 1986, 11-403 (Recomp.1985). Plaintiff predicated his assertion of irrelevance on the failure of the factual record developed for trial to establish direct or circumstantial evidence demonstrating that either Denena's or Decedent's alleged intoxication was a proximate cause of the fatal accident.
Defendants argued that Denena could have swerved onto the right road shoulder and avoided Jaramillo's "slow moving automobile" had she not been intoxicated. In addition, Defendants' response to the motion in limine asserted that, based on the circumstances of this case, "had either driver been sober, the accident was avoidable."
During the hearing on the motion in limine, the trial court concluded, "I'm going to deny the motion [in limine]. I feel that the evidence of [Peri Ann] Denena's intoxication is an immaterial [sic] issue of fact that the jury should be able to consider." When considering the motion as it applied to Decedent's alleged intoxication, the trial court added, "I'm going to go ahead and allow evidence concerning the intoxication of the deceased. I think that is as important as the intoxication of Ms. Denena and Mr. Jaramillo." However, the trial court granted Plaintiff's motion to exclude evidence of the level or presence of marijuana in Decedent's blood.

I. Introduction of Evidence of Intoxication
As an initial matter, we note that New Mexico's Supreme Court recently considered the issue of introducing evidence of intoxication *1013 in automobile accident situations. Romero v. State, 112 N.M. 332, 815 P.2d 628 (1991). In Romero, the Supreme Court upheld a trial court decision excluding evidence of intoxication of passengers killed in a single car accident. The Supreme Court explained, "[t]hat decision was the trial court's to make considering all the surrounding circumstances." Id. at 333, 815 P.2d at 629. The Court stated, "[w]hile the jury might have been served in evaluating this evidence by considering the effect of the passengers' intoxication on the passengers' decision to ride in an overcrowded vehicle, we cannot say ... that the jury should have considered this effect." Id.
Accordingly, our beginning premise is that evidence of intoxication is not automatically admitted, but is fact sensitive and largely depends upon the circumstances of each case. Two recent decisions by this Court are illustrative. In Plummer v. Devore, 114 N.M. 243, 836 P.2d 1264 (Ct.App.), cert. denied, 114 N.M. 82, 835 P.2d 80 (1992), we held that evidence of a driver's intoxication, admitted at trial through breathalyzer test results and expert testimony, was error and required reversal. We noted, "[t]here was no showing whatsoever that the machine [an Intoxilyzer 5000] was properly calibrated or that it was functioning properly at the time of the test." Id. at 246, 836 P.2d at 1267. Moreover, we explained that except for the erroneously admitted test results and expert testimony on the effects of alcohol, "[t]here was little, if any, other evidence of ... intoxication." Id. As discussed below, we believe this is important because here, as in Plummer v. Devore, there is no evidence of intoxication or negligence on the part of the non-party driver of the car in which Decedent was riding when killedexcept for the breathalyzer test results and expert testimony on the effects of alcohol.
Moreover, in Estate of Mitchum v. Triple S Trucking, 113 N.M. 85, 823 P.2d 327 (Ct. App.), cert. denied, 113 N.M. 16, 820 P.2d 1330 (1991), we considered the affirmative defense of intoxication in workers' compensation cases. We held that evidence of intoxication was properly considered in that case. Most important for our consideration in the present appeal is the discussion of causation in that decision. We stated, "in order to establish the affirmative defense of intoxication, an employer must present evidence satisfying a dual requirement indicating (1) that the worker was intoxicated at the time of his or her accident, and (2) that such intoxication was a proximate cause of the resulting injury." Id. at 89-90, 823 P.2d at 331-32. Using these two recent decisions as guides, we think it appropriate to require the same showing of proximate causation in the present case. See Scott v. Rizzo, 96 N.M. 682, 634 P.2d 1234 (1981) (thrust of comparative negligence is to apportion fault between or among negligent parties whose negligence proximately causes any part of a loss or injury). Accordingly, our concern and the dispositive issue before us is whether the intoxication of either Decedent or the non-party driver was a proximate cause of the damages involved in this case. The evidence bearing on the issue of proximate causation was principally established by an eyewitness, the investigating state police officer, a traffic reconstruction report prepared at the request of the district attorney, and the testimony of the district attorney's investigator. Plaintiff's expert on the effects of alcohol testified regarding possible negligence, but not proximate cause. Defendants' witnesses testified that the road in the vicinity of the accident is straight, flat and has wide shoulders.
The eyewitness, Rose Ortiz, testified:
A Well, we were just being real cautions [sic] and we were drivingwell, the blue car [Denena vehicle] and I were driving approximately 45 or 50 miles an hour, and I saw a car coming northbound and everything seemed fine, really. Everybody was going in their lane and everything seemed normal. And just as we got right by the Colmex gas station, the car that was going northbound just in an instant made like a left-hand turn and went head-on into the blue car.
Q Did you observe the driver of the blue car taking any evasive action?

*1014 A No, sir. It happened so fast it just didn't seem possible.
On cross-examination she was asked again about the evasive action of the Denena vehicle and denying seeing any such action said, "It happened too suddenly."
State Police Officer Randy Wright was also called by Plaintiff. After discussing his experience, which included over one hundred accident investigations, and six hundred DWI arrests, he was asked:
Q Officer, in your opinion, what did Frank Jaramillo do to cause the collision?
A Well, he turned in front of the vehicle that was going south-bound and pulled into the south-bound lane.
Q Did you form any opinion at that time as to what [Peri Ann] Denena may have done to cause the collision?
A She went off into the south-bound shoulder to the right which would have been taking evasive action.
Q So your opinion was that at the time of the collision she was taking some kind of evasive action?
A She went over to the right-hand shoulder which would be the only evasive action she could have taken.
Q Now, Officer, as part of your investigation, did you look at any contributing factors that Boyd Buffett might have made to the collision?
A Yes, I did.
Q Were you able to determine whether Boyd Buffett contributed at all to the collision in this case?
A As far as I could tell he didn't, no.
Later Officer Wright was asked to assume Denena was double the legal presumption for intoxication and whether he could identify "any contribution that she had to the collision," to which he replied, "Not contributing to the collision, no."
The testimony of Joe Ortiz, an investigator with the district attorney's office and a deputy medical investigator for the State of New Mexico was offered by Plaintiff. Ortiz assisted Officer Wright in an investigation of the site of the accident. Ortiz authenticated Jaramillo's blood alcohol test results and several photographs taken approximately eight hours after the accident. Plaintiff introduced, through Ortiz, a letter to the district attorney written by a traffic reconstruction expert retained by the district attorney to determine whether a sufficient factual basis existed for charging Jaramillo with vehicular homicide. The letter provided in pertinent part:
The analysis of the collision shows that the area of impact was entirely in the south-bound lane [Denena's lane] such that the right side [the passenger side] of Vehicle No. 1 [the Jaramillo vehicle] was approximately 2 and-a-half feet on the wrong side of the center stripe.
Later Ortiz was asked:
Q As part of your investigation into the matter and as part of your duties, have you formed any opinion as to the cause of the accident, the collision between the Denena vehicle and the Jaramillo vehicle?
. . . .
A Basically, it was that the Jaramillo vehicle went into the south-bound lane and struck the Denena vehicle.
On cross-examination Ortiz was asked:
Q In your opinion, was there enough room for the Denena car to have gotten around the Jaramillo car and still stayed on level, paved road?
A According to witness statements, she didn't have a chance. The vehicle turned directly into her lane.
Finally, in response to questions regarding whether the Denena vehicle took evasive action, Ortiz testified, "It appeared that she wasaccording to the statement of the eyewitness and what we saw, she was going toward the side. There wasn't a lot of time where she was able to avoid it because it happened so quickly."
Defendants produced eight witnesses. Several testified about alcohol. Two testified about the road condition at the site of the accident. For instance, Roger Romo testified about the road shoulders: "They're pretty wide right there. Pretty flat." Jim Fambro *1015 testified: "It's a wide road, especially compared to the other roads around here. It's got a good paved shoulder."
The above review of the testimony and record indicates that Defendants produced no direct evidence of proximate causation by the occupants of the Denena vehicle. They produced no witnesses on the issue of proximate causation; their witnesses merely established that at the time of the accident, the road was "flat" and had "wide shoulders." They produced no expert witnesses nor any accident reconstructionists. They used Plaintiff's expert on the effects of alcohol to establish that human psychomotor skills are increasingly impaired as blood alcohol levels increase. In other words, the conclusions of the state police officer, the district attorney's investigator, and the accident reconstructionist material brought in through the investigator indicating that the non-party driver, nor Decedent, were a proximate cause of the accident in question all went unchallenged.[2] While we agree that circumstantial evidence may be used to prove facts, SCRA 1986, 13-308 (Repl.1991), it is limited by the rule that inferences drawn therefrom must be reasonable. See Andrus v. Gas Co. of N.M., 110 N.M. 593, 596, 798 P.2d 194, 197 (Ct.App.), cert. denied, 110 N.M. 260, 794 P.2d 734 (1990). But see Cantrell v. W & C Contracting Co., 112 N.M. 609, 817 P.2d 1251 (Ct.App.) (substantial evidence based on admissions of the worker, circumstances surrounding the accident, the investigating officer's investigation, and evidence found at scene of accident existed supporting finding of workers' compensation judge that the worker was intoxicated at the time of accident and that his intoxication was the proximate cause of his injuries), cert. denied, 112 N.M. 440, 816 P.2d 509 (1991).
Thus, our review of the record establishes that Defendants actually rely on a single inference: that Denena's intoxication caused a delayed psychomotor reaction to the threat of the oncoming vehicle of Jaramillo and that, in the absence of intoxication, Denena could have suddenly swerved out of the way, onto the shoulder of the road and perhaps into a nearby paved area to avoid the accident. We disagree, however, with this hypothesis. Our review of the record reflects that Denena could not have avoided the collision. Therefore, the evidence of Denena's and Decedent's intoxication was irrelevant to any issue in this case and, under the circumstances of this appeal, should have been excluded because of its highly prejudicial effect on the jury. See NMSA 1978, 11-403 (Recomp.1986) (although relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"); Roselli v. Rio Communities Serv. Station, Inc., 109 N.M. 509, 512, 787 P.2d 428, 431 (1990) (trial court abuses its discretion when its decision is contrary to logic and reason).

II. Submission of Special Verdict to Jury Permitting Apportionment of Fault to Denena and Decedent
We first note that, "the issue of whether evidence is sufficient to create a fact issue for jury determination is a question of law for the court." Gerety v. Demers, 86 N.M. 141, 142, 520 P.2d 869, 870 (1974). Accordingly,
This Court must ascertain for itself what the applicable law is, whether the instructions were excepted to or not. A proper motion for a directed verdict and its denial will always preserve for review the question whether under the law truly applicable to the case there was an adequate evidentiary basis for the submission of the case to the jury.
Id. at 143, 520 P.2d at 871. Plaintiff's motion in limine, motion for directed verdict, and motion for new trial were principally directed at Defendants' failure of proof on the issue of proximate causation, and therefore, comparative negligence. While Plaintiff did not specifically *1016 object to the special verdict instruction permitting apportionment of liability, this was unnecessary. The written motions below, combined with the argument in the brief, are treated on appeal as a substantial evidence challenge to the submission of the special verdict instruction. See First Nat'l Bank in Albuquerque v. Sanchez, 112 N.M. 317, 320, 815 P.2d 613, 616 (1991); Romero v. Mervyn's, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989) (to preserve for appeal a challenge to a jury instruction, challenge below must call trial court's attention to the lack of substantial evidence on a material issue); Andrus, 110 N.M. at 598, 798 P.2d at 199; see also 5 Am.Jur.2d Appeal and Error §§ 623, 632 (1962). By arguing comparative fault on behalf of the occupants of the Denena vehicle, Defendants presented an affirmative defense and, therefore, the burden of proof rests completely on them. See Scott v. Rizzo, 96 N.M. 682, 634 P.2d 1234 (1981); Marchese v. Warner Communications, Inc., 100 N.M. 313, 670 P.2d 113 (Ct.App.), cert. denied, 100 N.M. 259, 669 P.2d 735 (1983); Armstrong v. Industrial Elec. & Equip. Serv., 97 N.M. 272, 639 P.2d 81 (Ct.App. 1981); see also Restatement (Second) of Torts § 433B(2) (1965); 57B Am.Jur.2d Negligence § 1129 (1989). "Generally, the tests which are applied in determining whether the conduct of a defendant was the proximate cause of the injury are applied in determining whether the conduct of the plaintiff contributed proximately to the injury." 57A Am.Jur.2d Negligence § 995 (1989) (footnote omitted); see also May v. Baklini, 85 N.M. 150, 509 P.2d 1345 (Ct.App.) (contributory negligence embraces two concepts: negligence and proximate cause), cert. denied, 85 N.M. 144, 509 P.2d 1339 (1973); 75A Am. Jur.2d Trial §§ 983, 984 (1991).
It is well settled that a jury may be instructed on a party's theory of the case only when substantial evidence supports the requested instruction and a failure to establish proof on each element of the defense of comparative negligence should result in no instruction on that particular theory. See Archibeque v. Homrich, 88 N.M. 527, 531, 543 P.2d 820, 824 (1975); see also Paddock v. Schuelke, 81 N.M. 759, 473 P.2d 373 (Ct.App. 1970); 75A Am.Jur.2d Trial § 987 (prima facie entitlement to jury instruction arises out of presentation of competent evidence on every element of the defense).
Under comparative negligence, fault may be allocated between defendant and a tortfeasor not joined as a party to the action, so long as evidence is presented to establish that the absent party was negligent and fault can be fairly distributed in proportion to the injury caused by the act of each joint tortfeasor.
Martinez v. First Nat'l Bank of Santa Fe, 107 N.M. 268, 270, 755 P.2d 606, 608 (Ct.App. 1987) (emphasis added); Archuleta v. Johnston, 83 N.M. 380, 492 P.2d 997 (Ct.App.) (negligence per se does not answer fact question of proximate causation), cert. denied, 83 N.M. 379, 492 P.2d 996 (1971); see also 75A Am.Jur.2d Trial § 726 (1991) (scintilla of evidence insufficient to support submission to jury on issue); but see State v. Romero, 69 N.M. 187, 189, 365 P.2d 58, 59 (1961) (eyewitness testimony consistent with evidence of intoxication sufficient proof of proximate cause in vehicular homicide case).
As noted above, Defendants' showing on the issue of proximate causation was insufficient to establish a foundation for the introduction of evidence of intoxication. Therefore, we hold the same deficiency controls the issue of Defendants' entitlement to a jury instruction on the affirmative defense of comparative fault of Denena and Decedent. See Ronald A. v. State Human Servs. Dep't, 110 N.M. 228, 232, 794 P.2d 371, 375 (Ct.App.) (argument of counsel is not evidence and cannot establish facts), rev'd on other grounds, 110 N.M. 454, 797 P.2d 243 (1990). "To base a jury instruction on speculation or conjecture is not proper, and the interjection of a false issue and the giving of instructions not warranted by the evidence require a reversal." Archibeque, 88 N.M. at 531, 543 P.2d at 824; see also Paddock, 81 N.M. at 764-65, 473 P.2d at 378-79. Accordingly, we find it was error to include the occupants of the Denena vehicle on the special jury verdict form. See Fierro v. Murphy, 85 N.M. 179, 180-81, 510 P.2d 112, 113-14 (Ct.App. 1973) (evidence that accident happened so quickly as to preclude the plaintiff from taking evasive action supports finding of proximate *1017 causation by the defendant); Gray v. E.J. Longyear Co., 78 N.M. 161, 429 P.2d 359 (1967) (the plaintiff's showing that fire hazard existed but failure to show how fire started, held insufficient to create fact issue for jury as to proximate cause of fire); see also Restatement (Second) of Torts § 434 cmt. d (1965); 75A Am.Jur.2d Trial § 728 (1991).

III. Jury Bias or Prejudice
The jury apportioned sixty-six and two-thirds percent of the fault of the cause of this accident to Denena and the Decedent. However, as we have discussed above, the jury made this finding in spite of a complete lack of showing by Defendants of causation on the part of either of these individuals. Accordingly, we believe the jury based this conclusion on the evidence of intoxication. Our review of the record reveals that the focal point of the Defendants' trial defense was Denena's intoxication. The jury was offered the opportunity to compare the fault of three intoxicated individuals and it equally apportioned the fault accordingly. However, this evinces a clear misunderstanding in the minds of the jury of the law and of the concept of proximate cause. Further, the jury's misunderstanding of this critical element of Defendant's affirmative defense of comparative negligence is prejudicial error requiring remand. See Maxwell v. Santa Fe Public Schools, 87 N.M. 383, 386, 534 P.2d 307, 310 (Ct.App.1975) (discussion of harmless versus prejudicial error).
In future automobile accident cases involving intoxication evidence, we approve a trial court demanding a link between the prejudicial evidence of intoxication and the cause of the accident prior to admission of the intoxication evidence. A proffer that lays a foundation for admission under SCRA 1986, 11-104(B) (conditional relevancy) and demonstrates intent to connect conditionally admitted evidence of intoxication will greatly assist our trial courts. Where it is discernible, prior to the introduction of evidence of intoxication, that a party's intoxication is not a proximate cause of the accident out of which the damages arose, then the prejudicial evidence of intoxication is generally inadmissible. See Simonson v. White, 220 Mont. 14, 713 P.2d 983, 988-89 (1986).

IV. New Trial
Our final area of consideration determines whether the cause must be remanded as to all Defendants. As an initial matter, we note that because we find the jury was erroneously instructed on the issue of comparative negligence and because the jury erroneously received evidence of intoxication, the percentages of negligence do not, as required by SCRA 1986, 13-2219, total 100% after we subtract the proportion of fault attributed to Decedent and Denena. Although this appellate issue has presented itself in other New Mexico appeals, we can find no New Mexico cases within which this issue has been resolved. See Stetz v. Skaggs Drug Centers, Inc., 114 N.M. 465, 471, 840 P.2d 612, 618 (Ct.App.1992); Plummer v. Devore, 114 N.M. 243, 836 P.2d 1264 (Ct.App.1992) (because only one of two defendants against whom liability had been assessed was a party to the appeal, the appeals court did not address what would happen to the amount of fault assigned to the non-appealing party). Two possible alternatives are suggested by the few cases we have found which have dealt with this type of problem in other jurisdictions: a trial de novo, or a partial new trial addressing only those issues affected by the errors which occurred during trial.
New Mexico civil procedure clearly permits a partial new trial:
A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted.
SCRA 1986, 1-059(A) (Cum.Supp.1992). This rule allows the court to limit any new trial to issues incorrectly decided or not decided at all. See Sanchez v. Dale Bellamah Homes of N.M., Inc., 76 N.M. 526, 417 P.2d 25 (1966) (where the issue of damages is separable and distinct from the issues of negligence and proximate cause, and reversal is required because of errors in the amount of damages awarded, and where no error appears as to the other issues, a new trial *1018 may be limited to the issue in which the error is present). However, we do not believe that a partial new trial is appropriate under the present circumstances even though some jurisdictions hold that a defendant who has been exculpated from any negligence should not be subject to another trial. See Stokan v. Turnbull, 480 Pa. 71, 389 A.2d 90 (1978). We explain.
While New Mexico case law provides some guidance as to when issues may be separable under contributory negligence, see Sanchez v. J. Barron Rice, Inc., 77 N.M. 717, 725, 427 P.2d 240, 246 (1967); Cherry v. Stockton, 75 N.M. 488, 491-92, 406 P.2d 358, 360 (1965), we have not directly addressed when it is appropriate under comparative negligence to order a new trial for all co-parties following the determination on appeal of prejudicial errors. A number of other jurisdictions have, however, addressed granting new trials and have held that, under some circumstances, an exonerated codefendant will be required to stand trial again.
For example, in Williams v. Slade, 431 F.2d 605 (5th Cir.1970), the injured passenger in an automobile accident sued both the host driver and the driver of the other car. On the finding that the trial court improperly directed a verdict in favor of the host driver, the appeals court ordered the exonerated codefendant to stand trial again with the host. The Williams court stated, while rejecting the possibility of ordering only a partial new trial:
[A] court may properly award a partial new trial only when the issue affected by the error could have in no way influenced the verdict on those issues which will not be included in the new trial. If the decision on the other issues could in any way have been infected by the error then a new trial must be had on all issues.
Id. at 608.
In Blake v. Delhotel, 39 Ill.App.3d 725, 350 N.E.2d 880 (1976), and its companion case, Blake v. Mahaffey, 39 Ill.App.3d 724, 350 N.E.2d 883 (1976), the appellate court of Illinois determined that where it is impossible to separate multiple defendants as to the prejudice engendered in the minds of the jury, justice requires a retrial as to all. The plaintiff in these two related cases brought a negligence action to recover for injuries resulting from a three-car automobile collision. Following the verdict in favor of the plaintiff and against one of the defendants, the trial court granted a new trial for all the parties. On appeal, the court held that where "it is not possible to separate the defendants as to the harm that might have been done in the minds of the jury, we believe justice required that the case be retried as to both defendants." Id. 350 N.E.2d at 884.
The particular errors which the appellate court discovered were the plaintiff's, and the defendant's against whom the verdict was returned, failure to follow through with proof after laying a foundation for impeachment of a witness by a prior inconsistent statement. The appellate court determined that both parties' failure to introduce proof of prior inconsistent statements, after laying the foundation for impeachment, was material to the issue of fault. With respect to the exonerated defendant, the court granted a new trial as to this party, "not because of any errors asserted by plaintiff, but because the impeachment errors affected the jury's judgment as to both defendants." Id.
We believe Defendant's failure to prove that intoxication of either Denena or Decedent was a proximate cause of damages is similar to the situation in the two Blake cases. In the present case, Defendants introduced the affirmative defense of comparative fault, yet failed to establish that the actions of the non-party or Decedent proximately caused any of the damages involved in this case. In the two Blake cases, the foundation for impeachment was introduced, but then no evidence was provided to prove inconsistent statements of the witness in question. Just as the Blake court determined that the impeachment errors affected the jury's judgment, we believe the comparative negligence error and the introduction of evidence of intoxication affected the jury's evaluation of the evidence of fault of the other defendants.
In Turnbull v. Byram, 235 Kan. 891, 684 P.2d 429 (1984), a new trial was required after the court concluded that it could not assume that the jury would have assigned *1019 the same relative negligence if they had originally been presented with the remaining parties. As in the present case, the Turnbull court determined as a matter of law that one of the parties in that action was not negligent and therefore should not have been included in the pool of parties against whom some percentage of fault could be found. The court stated that the "35% negligence assigned to the City cannot be left dangling; it must be reassigned by the factfinders to the remaining parties." Turnbull, 684 P.2d at 434. Accordingly, the Turnbull court dismissed the party and granted a new trial to the remaining parties.
In Kuhnke v. Fisher, 210 Mont. 114, 683 P.2d 916, 922 (1984), the Supreme Court of Montana determined, in a wrongful death action against physicians and a hospital, that "[w]hen a party's right to a fair trial has been materially impaired by improper jury argument, the fact of the imperfect trial transcends the substantial but conflicting evidence that supports the jury verdict." Like the present case, the Kuhnke case was before the Supreme Court of Montana on a denial of the motion for a new trial. Counsel for one of the defendants made improper argument throughout the course of the trial. On appeal, the court stated that "[t]he only way to be sure which, if any, of the defendants should be exonerated or whether plaintiff should recover at all is to grant a new trial." Id.
In the instant case, we believe this to be the circumstance. Because the jury erroneously received evidence of intoxication and a special verdict instruction on the comparative negligence of Denena and Decedent, we believe that the jury's judgment was "infected," as described by the Williams court. Evidence of this infection is, as noted above, the jury's allocation of over sixty-six percent of the cause of this accident to Denena and Decedent. Although we are unable to determine how the jury might have apportioned fault in this case if they had been properly instructed, and had not received evidence of intoxication, we believe that since they were able to erroneously assign such a large percentage of fault to Denena and Decedent, then the jury's finding of no fault as against the bar owners and the police officer could also be in error. Regardless, we find the facts of this case present us with issues that are not separable and in the interest of justice require remand as to all Defendants.
Finally, with respect to Defendant Fabian Mascarenas' claim of immunity, we find no error and affirm the trial court's order addressing that issue.

CONCLUSION
Where the evidence overwhelmingly establishes that the only action that could have been taken by the non-party driver was to take instantaneous evasive action, Defendants have failed to establish adequate proof on the proximate causation element of the defense to entitle them to a jury instruction on comparative negligence. Therefore, it was error to give the jury the special verdict instruction permitting apportionment of fault to the occupants of the Denena vehicle and it was error to introduce evidence of intoxication into the trial in the first place. Therefore, we reverse the trial court and remand for a new trial as to all Defendants.
IT IS SO ORDERED.
FLORES, J., concurs.
HARTZ, J., dissents.
HARTZ, Judge (dissenting).
I respectfully dissent.
The question before this Court is whether to require AppelleesFabian Mascarenas, Martin Vargas, and Albino Chaconto submit to a new trial, even though the jury exonerated each of them from any responsibility in the death of Boyd Buffett. The majority does not base its ruling on any error in the jury instructions regarding the liability of Appellees or on any error with respect to the admission or exclusion of evidence regarding their liability. One indication of the remoteness of the connection between the case against Appellees and the alleged errors requiring a new trial is that the majority opinion does not mention Appellees in its discussion of the alleged errors.
As I understand the majority opinion, it requires a new trial for two reasons. One reason is that there was insufficient evidence *1020 to justify a jury instruction on the comparative fault of Buffett and his driver, Peri Ann Denena. The other reason is that the trial judge improperly admitted evidence of the intoxication of Buffett and Denena. I disagree with each of the majority's reasons on several grounds.
My grounds for disagreeing with the first of the majority's reasons are (1) the insufficiency of the evidence of proximate cause with respect to Buffett and Denena does not in itself entitle Plaintiff to a new trial against Appellees; and (2) in any event, there was sufficient evidence that the conduct of Buffett and Denena contributed to the accident. My grounds for disagreeing with the second reason are: (1) because there was sufficient evidence of proximate cause, the evidence of intoxication was admissible; (2) evidence of Buffett's intoxication was admissible (as to damages) even if there was insufficient evidence of proximate cause; (3) Plaintiff failed to preserve in district court his objection to the admission of the evidence of intoxication; and (4) improper admission of evidence of Denena's intoxication would not in itself justify a new trial against Appellees. I will discuss each of these grounds in the above order.

I. ORDERING NEW TRIAL BECAUSE OF INSUFFICIENCY OF EVIDENCE OF PROXIMATE CAUSE

A. Insufficiency of Evidence of Proximate Cause Does Not in Itself Justify New Trial
It is essential to keep in mind the respective roles of the parties. Buffett was a passenger in a vehicle driven by Denena when it collided with a vehicle driven by Jaramillo. The jury found that Jaramillo, Denena, and Buffett were negligent and that the negligence of each was a proximate cause of the accident. The jury apportioned one-third of the fault to each of them. AppelleesMascarenas, Vargas, and Chaconwere not present at the accident. Mascarenas had seen Jaramillo earlier in the evening. Plaintiff's contention was that Mascarenas, an off-duty sheriff's deputy, was negligent in failing to take reasonable steps to prevent Jaramillo, who was intoxicated, from driving his vehicle. In answer to a special interrogatory, the jury found that Mascarenas was not negligent. The alleged liability of Vargas and Chacon arose under the New Mexico dram shop statute, NMSA 1978, § 41-11-1(A) (Repl.Pamp.1989). Vargas and Chacon owned interests in the liquor license for Los Compadres Supper Club. Plaintiff's theory was that Los Compadres contributed to causing the accident by selling Jaramillo alcohol when he was intoxicated. Vargas managed Los Compadres and was present there during the night of the accident. The jury answered "no" to special interrogatories asking whether Vargas was negligent and whether Vargas, d/b/a Los Compadres, was negligent in allowing the sale of alcoholic beverages to Jaramillo while he was intoxicated. Chacon had no management responsibilities at Los Compadres, was not present at Los Compadres on the night of the accident, and denied an ownership interest in the business. The only special interrogatory mentioning him asked whether the bartender at Los Compadres on the night of the accident (who was not a named defendant) was Chacon's agent or servant. The jury answered "no." The jury also answered "no" to a special interrogatory asking whether anyone not named as a party was negligent.
The majority holds that there was insufficient evidence to sustain the jury's findings that the conduct of Buffett and Denena contributed to Buffett's death. The majority then apparently holds that Plaintiff is entitled to a new trial against Mascarenas, Vargas, and Chacon on that ground alone, regardless of the propriety of the admission of evidence that Buffett and Denena were intoxicated. I fail to understand the majority's rationale.
An appellate court should not set aside a verdict in favor of a party unless the verdict is undermined by prejudicial error, such as when the verdict is not supported by the evidence, see Clinard v. Southern Pac. Co., 82 N.M. 55, 475 P.2d 321 (1970), the jury was instructed improperly on the law necessary to render the verdict, see Jewell v. Seidenberg, 82 N.M. 120, 477 P.2d 296 (1970), or there was error in the presentation of the case to the jury (such as errors in evidentiary *1021 rulings or improper comments by counsel), see Clinard. The requirement of such prejudicial error does not evaporate simply because of the presence of other parties in the trial. Our Supreme Court recognized this proposition in Sanchez v. J. Barron Rice, Inc., 77 N.M. 717, 427 P.2d 240 (1967). Josephine Sanchez died from carbon monoxide poisoning. The administrator of her estate sued three defendants under the wrongful death statute. One defendant manufactured the furnace that allegedly caused the death. A second defendant, R. & H. Enterprises, Inc., purchased the furnace from the first defendant and installed it in the house that was sold to the victim's father by the third defendant. Each defendant was sued for negligence and breach of implied warranty. The jury rendered verdicts in favor of all three defendants. The Court, finding error in the admission and exclusion of evidence relevant to the negligence of R. & H., ordered a new trial on the claim of negligence against R. & H. As for the other defendants, the Court wrote: "The warranty claims and the negligence claims against [the two other defendants] are severable from the negligence claim against R. & H. Being severable and having been decided, they need not be retried." Id. at 725, 427 P.2d at 246. At the very least, Sanchez stands for the proposition that a party exonerated at trial is not automatically subjected to a new trial whenever there has been an error at trial with regard to the liability of someone else.
Decisions in other jurisdictions also support the view that a court may issue an order requiring a new trial for one defendant without requiring a new trial for an exonerated co-defendant. Appellate courts have upheld such orders when there is no indication that the verdict exonerating the co-defendant was affected by the grounds justifying the new trial. See State v. Municipality of Anchorage, 805 P.2d 971, 975 (Alaska 1991) (no indication that jury's error or misconduct with respect to damages had any effect on determination that co-defendant was not negligent); Kimbell v. DuBose, 139 Ga.App. 224, 228 S.E.2d 205 (1976); Mertsaris v. 73rd Corp., 105 A.D.2d 67, 482 N.Y.S.2d 792, 806 (App.Div.1984) (error with respect to one defendant did not infect verdict exonerating co-defendant); cf. Juneau Square Corp. v. First Wis. Nat'l Bank, 624 F.2d 798, 811 (7th Cir.1980) (error entitling unexonerated defendants to new trial only tended to reinforce verdict in favor of exonerated co-defendant, so no abuse of discretion in failure to order co-defendant to stand trial again). Indeed, in such circumstances appellate courts have found that it would have been an abuse of discretion for the trial court to require an exonerated co-defendant to stand trial a second time, Stokan v. Turnbull, 480 Pa. 71, 389 A.2d 90, 92 (1978), and have even reversed an order granting a new trial as to an exonerated co-defendant, McIntosh v. Lawrance, 255 Or. 569, 469 P.2d 628 (1970) (en banc).
This result does not change with the adoption of comparative negligence. In two of the above cases the doctrine of comparative negligence had been applied at trial. State v. Municipality of Anchorage; Mertsaris v. 73rd Corp. The impact of comparative negligence has been explicitly addressed by the Texas Supreme Court. In Methodist Hospitals v. Sullivan, 714 S.W.2d 302 (Tex.1986), the court rejected the statement by the court of appeals that "`the doctrine of comparative negligence requires reversal and new trial as to all multiple defendants in an action for damages, even though error has been found only as to one.'" Id. at 303 (quoting Sullivan v. Methodist Hospitals, 699 S.W.2d 265, 273 (Tex.Ct.App.1985)). Instead, the supreme court stated, "In a multiple defendant case, when one defendant is not found negligent by the jury, and an appeals court leaves that finding intact, remand is improper for the defendant whose liability in negligence has been determined." Id.; accord State Dep't of Highways & Pub. Transp. v. Pruitt, 752 S.W.2d 598, 602 (Tex.Ct.App.1988); Conaway v. Roberts, 725 S.W.2d 377, 380 (Tex. Ct.App.1987) (improper directed verdict for defendant did not require new trial as to exonerated co-defendant).
Some confusion on this point may arise because the adoption of comparative negligence can require an otherwise unnecessary retrial of a co-defendant who was found liable at the original trial. Even if there was no error affecting the finding of damages or the *1022 finding of liability against that co-defendant, errors with respect to other defendants may require that a new trial include an unexonerated co-defendant because the jury would likely recompute the percentages of fault of those defendants found to be liable. For example, if the jury had found that each of three defendants bore an equal one-third share of the liability and the reviewing court ruled that the trial judge had improperly admitted evidence against one defendant, it probably would be necessary to retry all three defendants because of the chance that the jury would have apportioned fault differently if it had heard only the proper evidence. If exclusion of the improperly admitted evidence would have caused the jury to view one defendant more favorably, the jury could well have imposed a higher percentage of fault on each of the other defendants even though exclusion of the evidence would have had no effect on the jury's evaluation of the conduct of those two defendants. That consideration does not apply, however, when the defendants who might be subjected to a new trial were all exonerated at the first trial. There is only one way to apportion the absence of fault. If the evidentiary error could have had no effect on the jury's evaluation of the conduct of the exonerated defendants, then the jury would still find them not liable regardless of whether the jury changed its view regarding the conduct of other persons.
The majority opinion expresses concern that the percentages of comparative fault no longer add up to 100% after the percentages of fault of Buffett and Denena are subtracted. But the ready answer to that concern is to note that Jaramillo would be 100% at fault if the jury exonerated everyone else who could have been found to be at fault.
The cases relied upon by the majority are distinguishable. Blake v. Delhotel, 39 Ill. App.3d 725, 350 N.E.2d 880 (1976), and Blake v. Mahaffey, 39 Ill.App.3d 724, 350 N.E.2d 883 (1976), both involved the trial of a three-car accident. The three drivers were parties. One attorney had improperly impeached a non-party eyewitness by cross-examining him with respect to prior inconsistent statements but then never offering proof that he made the prior inconsistent statements. This error affected the jury's evaluation of the evidence of fault of each driver. The majority analogizes that situation to this case, stating that the failure to prove the foundation for impeachment in the Blake cases was similar to the failure in this case to prove that the actions of Denena or Buffett proximately caused the accident. The logic behind this argument escapes me. The majority does not explain why failure of the defendants to prove the liability of Buffett and Denena would in itself affect the jury's decision regarding the liability of Mascarenas, Vargas, or Chacon. (Later I will address whether the admission of evidence of the intoxication of Buffett and Denena could justify a new trial as to Appellees.)
Turnbull v. Byram, 235 Kan. 891, 684 P.2d 429 (1984), did not order a new trial against an exonerated defendant. One driver had sued another driver and a city. The jury found all three parties to be at fault and apportioned negligence. The appellate court held that the city was not negligent. It was therefore necessary for a new jury to recompute the relative faults of the two drivers. The doctrine of comparative negligence requires the jury to compare the negligence of those persons who are at fault. As I have already discussed, if an appellate court finds that the jury erred in finding a party at fault, then a new comparison must be madebut only between those parties already found to be at fault. The holding in Turnbull seems reasonable. But it hardly stands for the proposition that an exonerated defendant must always be retried if the jury erred in assigning fault to someone else.
In Kuhnke v. Fisher, 210 Mont. 114, 683 P.2d 916 (1984), counsel for one party engaged in improper final argument that prejudiced the plaintiff, thereby favoring all defendants. In that circumstance a new trial was required as to all defendants. Again, as in the Blake cases, this is simply an example of error in the presentation of the trial infecting the verdict as to a party, thereby requiring that the party submit to a new trial.
The case of most help to the majority is Williams v. Slade, 431 F.2d 605 (5th Cir. 1970), which concerned an intersection collision in which both drivers, Slade and Treadwell, *1023 claimed to have a green light. The passenger in Treadwell's vehicle sued both drivers. The trial court improperly directed a verdict in favor of Treadwell at the close of plaintiff's case. The jury found Slade not negligent. The appellate court wrote:
We cannot ignore the inter-relatedness of the automobile tactics of both Slade and Treadwell. There is no suggestion of unavoidable accident or of contributory negligence [of the plaintiff]. As a result, we would need blinders not to see that the plaintiff was injured by the negligence of either Slade or Treadwell or both in tandem. The jury no doubt also perceived this fact. The problem is that we cannot be sure what effect it had upon the jury's determination as to Slade's negligence when the jury was deprived of the opportunity to adjudge the responsibility of both Treadwell and Slade together and was left with only an all or nothing choice as to defendant Slade. Consequently, we are not sure under the circumstances of this case that Slade's liability for the accident was properly determined at the first trial. Slade must therefore stand trial again so that this issue may be properly determined. The jury should have been given the opportunity to view the accident comprehensively, taking into its vista the acts and omissions of both Treadwell and Slade. We see no need to repeat the error by giving the jury on retrial the all or nothing choice as to defendant Treadwell alone. Such procedure would be unjust to Treadwell, who may or may not be solely responsible for the entire accident. On remand, therefore, the jury must be given a binocular rather than a monocular view of the accident, with the hope that in this manner it may properly apportion the responsibility between the two parties to the accident, Treadwell and Slade.
Id. at 609. The court observed that the case illustrated why trial judges should be reluctant to direct verdicts. Id. at 606. In contrast to Williams, in this case the liability of Mascarenas, Vargas, and Chacon is independent of the liability of Buffett and Denena. The jury found Jaramillo liable. The jury would certainly have found Jaramillo more liable if it had been instructed not to consider the negligence of Buffett or Denena. Yet that would not change the jury's role in determining the negligence of Mascarenas or the liability of Vargas and Chacon. Absent here is the "inter-relatedness" of the actions of (1) Denena and Buffett on the one hand, and (2) Mascarenas and Los Compadres on the other. The determination of whether Mascarenas and Los Compadres contributed to Jaramillo's intoxicated driving is logically and factually independent of the determination of whether Denena or Buffett could have avoided the accident. In particular, one may wonder how the alleged failure to prove the fault of Denena and Buffett could influence the jury's determination that the bartender at Los Compadres was not Chacon's agent, which was the basis for exonerating Chacon. Moreover, in this case the jury was not deprived of a "binocular" view of the accident. On the contrary, the error found by the majority is that the jury was given a binocular view when its view of the potential liability of the parties should have been restricted (with no opportunity to find Denena or Buffett at fault). Williams is not support for the remand in this case.
To sum up on this point, I fail to see how the jury's determination that Mascarenas, Vargas, and Chacon were not liable was infected by the trial judge's instruction permitting the jury to apportion fault to Buffett and Denena. The majority has failed to provide an explanation of how such infection could occur. In the absence of such infection, the law appears clear that an appellate court cannot order a new trial as to an exonerated defendant.

B. There Was Sufficient Evidence of Proximate Cause
In any event, the trial judge properly ruled that the evidence justified an instruction permitting the jury to apportion fault to Buffett and Denena. I will consider first the sufficiency of the evidence that Denena's conduct was a proximate cause of Buffett's injury. Then I will address the sufficiency of the evidence that Buffett's own conduct was a proximate cause.

*1024 1. Sufficiency of Evidence That Denena's Conduct Was a Proximate Cause
The jury could properly find Denena partially at fault if the evidence would support a determination that the accident could have been avoided or mitigated if Denena had been driving sober at a proper speed while maintaining a proper lookout. I agree with the trial judge that the evidence was sufficient for such a finding. On review an appellate court should examine the evidence and the inferences therefrom in the light most favorable to support the verdict, and all evidence and inferences to the contrary should be disregarded. See Clovis Nat'l Bank v. Harmon, 102 N.M. 166, 692 P.2d 1315 (1984). The appellate court does not reweigh the evidence or substitute its judgment for that of the fact finder. See id.; Ideal Basic Indus. v. Evans, 91 N.M. 460, 575 P.2d 1345 (1978).
It was undisputed that Denena had plenty of room to the right of her lane of traffic where she could have driven safely to avoid a collision. It was also undisputed that Jaramillo and Denena were both very intoxicated. An expert witness testified that their levels of intoxication would have greatly slowed their reactions. There was evidence that Jaramillo was driving 30 miles per hour and Denena was driving 45 to 50 miles per hour in the 45-mile-per-hour zone. There was testimony that at the point of collision the right-hand side of Jaramillo's car was 2 1/2 feet over the center stripe. The damage to both vehicles was on their left front and left sides. Although the only eyewitness to the accident who testified at trial stated that Jaramillo veered suddenly and Denena had no chance to avoid the accident, her testimony was impeached substantially. She testified that she opened the passenger-side door to Denena's car after the accident, although the rescue personnel at the scene testified that the doors were all jammed and the jaws of life were necessary to extricate Buffett from the vehicle. The impeachment apparently had significant impact because Plaintiff's counsel referred to it at least three times in his opening final argument. Also, one officer's testimony indicated that the eyewitness had told him that Denena had tried to avoid the accident. Jurors could properly have discounted the eyewitness's version of events. See Plummer v. Devore, 114 N.M. 243, 247, 836 P.2d 1264, 1268 (Ct.App.), cert. denied, 114 N.M. 82, 835 P.2d 80 (1992) (jury free to disregard testimony). Relying instead on the evidence of Jaramillo's high state of intoxication, on the expert testimony regarding the effects of intoxication, and on their own experiences in sharing the highways with intoxicated drivers, the jurors could have concluded that a more probable scenario is that Jaramillo meandered from side to side before wandering into the wrong lane, giving a sober, alert driver coming from the other direction ample time to observe the potential danger, slow down, and move to the right.
Perhaps more importantly, the investigating officer, Randy Wright, although testifying that Denena did not contribute to the collision, testified that Denena had taken steps to avoid it. As Plaintiff's counsel stated in final argument, "Officer Wright uncontrovertably said that in his opinion, Peri Ann Denena did take evasive action, tried to turn to the side of the road[.]" Wright's testimony is consistent with tire marks on a diagram he prepared, which appear to show skid-marks from Denena's vehicle turning to the right for several feet before the point of impact. In light of the testimony that a person as intoxicated as Denena would have a greatly slowed reaction time, the jury could properly infer that if Denena was able to take some evasive action, a sober person could have accomplished much greater evasive action and avoided the fatal injury to Buffett.
This is not a simple issue to resolve. Appellate courts may be spoiled by the common availability of testimony by accident reconstructionists who can provide considerable detail concerning the paths of colliding vehicles. We have no such detailed reconstruction in this case. Nevertheless, I respectfully disagree with the majority and would hold that the trial judge acted properly in permitting the jury to find Denena at fault in failing to avoid the accident.

*1025 2. Sufficiency of Evidence That Buffett's Conduct Was a Proximate Cause
For the purposes of this discussion, I will assume that the evidence sufficed to establish that Denena could have avoided or mitigated the accident. If the accident could not have been avoided or mitigated by the Denena vehicle, then any negligence by Buffett could not have contributed to the accident.
Defendant raised two theories of negligence with respect to Buffett. First, as a passenger, Buffett may have had a duty to protect his own safety by maintaining a lookout and warning the driver of impending danger. See Kindschi v. Williams, 86 N.M. 458, 525 P.2d 385 (Ct.App.1974) (passenger apprehensive about danger of driving during a heavy rain may have had duty to stay alert and exercise reasonable care for his own safety). I do not rely on this theory.
The second theory is that Buffett was negligent in subjecting himself to danger by riding in a vehicle driven by a highly intoxicated person. In accordance with our uniform jury instruction, SCRA 1986, 13-1207 (Repl.1991), the trial judge instructed the jury on the duty of a passenger. The instruction contained the following language:
A passenger has a duty to use ordinary care for his own safety. A passenger may not sit idly by and permit himself to be driven carelessly, to his injury, where there are dangers which are known to him or which reasonably should be known to him.
See Janifer v. Jandebeur, 551 A.2d 1351 (D.C.1989); Lee v. Kellenberger, 28 N.C.App. 56, 220 S.E.2d 140 (1975); Dubecky v. Horvitz Co., 64 Ohio App.3d 726, 582 N.E.2d 1087, 1093 (1990); Rollins v. Winn Dixie, 780 S.W.2d 765 (Tenn.Ct.App.1989); Restatement (Second) of Torts § 466(a) (1963-64); 5 Blashfield Automobile Law and Practice § 215.30 (3d ed. 1966).
The evidence sufficed to establish that Buffett knew or reasonably should have known that Denena was too intoxicated to drive safely. There was testimony that shortly before the accident Buffett and Denena had left a nightclub where she worked. There was also expert testimony that at the time of the accident Denena had a blood alcohol level above that at which alcohol generally causes a person (1) to have a great deal of difficulty walking in a coordinated manner, (2) to be irrational, and (3) to pass out. Buffett would be negligent in becoming a passenger in a vehicle driven by a person showing such signs of impairment. See Gravois v. Succession of Trauth, 498 So.2d 140 (La.Ct.App. 1986).

II. ADMISSION OF THE EVIDENCE OF INTOXICATION DOES NOT WARRANT A NEW TRIAL
The majority's second reason for ordering a new trial as to Appellees is that the trial judge improperly admitted evidence of the intoxication of Buffett and Denena. As stated above, I disagree on several grounds. The evidence of intoxication was admissible on the issue of liability, and Buffett's intoxication was also admissible on damages. In any event, Plaintiff did not preserve for appeal any objection to admission of the intoxication evidence. Finally, even if the evidence of Denena's intoxication was inadmissible, that error would not justify a new trial as to Appellees.

A. The Intoxication Evidence Was Admissible

1. Evidence of Denena's Intoxication
I agree with the majority that if Denena could not have avoided or mitigated the collision with the Jaramillo vehicle, then Denena's level of intoxication was irrelevant to any issue in the case. As discussed in Section I(B)(1) above, however, there was sufficient evidence for the jury to find that Denena could have avoided or mitigated the collision. The discussion in that section also establishes the relevance of Denena's intoxication in arriving at that finding. See SCRA 1986, 11-401 ("`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") Given that relevance, it was well within the bounds of the trial judge's discretion to admit the evidence *1026 of Denena's intoxication. See SCRA 1986, 11-403.

2. Evidence of Buffett's Intoxication
The evidence of Buffett's intoxication was admissible for two purposes. First, as explained in Section I(B)(2) above, there was evidence that Buffett shared responsibility for his injury because he negligently subjected himself to danger by riding in a vehicle driven by a highly intoxicated person. Buffett's own substantial intoxication was relevant to explain why he would be willing to be driven by Denena when she was in that condition. See Peavler v. Board of Comm'rs, 557 N.E.2d 1077, 1082 (Ind.Ct.App.1990); Dubecky, 582 N.E.2d at 1092, 1095; Janifer.
Second, even if the majority is correct that Buffett and Denena bore no responsibility for the accident and Buffett's death, Buffett's intoxication was admissible on the issue of damages. In accordance with the uniform jury instruction on damages for wrongful death, SCRA 1986, 13-1830 (Repl.1991), the jury was instructed that it could award damages for "pain and suffering experienced by the deceased between the time of injury and death." There was testimony that Buffett did not die instantaneously. Therefore, Buffett's intoxication was relevant regarding the extent to which he suffered prior to his death. See Gallagher v. Four Winds Motel-Hotel, 233 Pa.Super. 1, 335 A.2d 394, 397 (1975); Hansen v. Johns-Manville Prods. Corp., 734 F.2d 1036, 1047 (5th Cir.1984) (evidence of use of pain medication may reduce award for pain and suffering); Hernandez v. American Appliance Mfg. Corp., 827 S.W.2d 383, 388-89 (Tex.Ct.App.1992) (same); Helleckson v. Loiselle, 37 Wis.2d 423, 155 N.W.2d 45, 50 (1967) (same); see generally 1 Marilyn Minzer et al., Damages in Tort Action §§ 4.21[3], 4.22 (1992).

3. Failure to Preserve Objection to Intoxication Evidence
Even if the evidence of intoxication was inadmissible, Plaintiff is not entitled to relief on that ground because he failed to preserve in district court his objection to the evidence. To be sure, Plaintiff made a fine start at preserving his objection. Before trial Plaintiff filed a motion in limine with respect to evidence of intoxication of Buffett and any evidence (which would include evidence of intoxication) that Denena was negligent. The motion requested that such evidence not be tendered or mentioned by the defendants without their first seeking a ruling on admissibility outside the presence of the jury. In response one defendant represented to the court that there would be testimony that the accident was avoidable if Denena had been sober. On that representation the trial judge acted within his discretion in denying the motion in limine with respect to evidence of intoxication. As I have explained above, evidence of the intoxication of Denena and Buffett is admissible if Denena's intoxication contributed to the accident.
Therefore, to preserve his objection to the admission of the intoxication evidence, Plaintiff had a duty to alert the judge at trial to any failure by the defendants to establish the necessary foundation for the intoxication testimony. Many, perhaps most, jurisdictions hold that a motion in limine will not in itself preserve an objection to the admission of evidence, a further objection at trial being required. See 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 103[02], at 103-18 to -20 (1992); 1 Peter Tillers, Evidence in Trials at Common Law by John Henry Wigmore § 18, at 801-07 (1983); Colleen R. Courtade, Annotation, Sufficiency in Federal Court of Motion in Limine to Preserve for Appeal Objection to Evidence Absent Contemporary Objection at Trial, 76 A.L.R.Fed. 619 (1986); cf. Luce v. United States, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (by not testifying at trial, defendant failed to preserve contention in motion in limine that he could not be impeached by evidence of prior conviction). In support of this view, the Tenth Circuit Court of Appeals has said, "Only by specific, timely trial objection can the trial court entertain reconsideration of the grounds of the motion in light of the actual trial testimony and the surrounding circumstances developed at trial." McEwen v. City of Norman, 926 F.2d 1539, 1544 (10th Cir.1991).
Moreover, even in jurisdictions in which a motion in limine may preserve an objection, *1027 it does not follow that the motion always preserves every ground for the objection. When the basis of the error in the court's ruling is that the evidence at trial differed from what the proffering party predicted in response to the motion in limine, I would think that the objecting party would still have the duty to alert the judge at trial that the evidentiary predicate for the ruling on the motion had not been established at trial. Ordinarily, an improper ruling cannot be ground for reversal unless the trial court was alerted to the erroneous basis of its ruling, see State v. Flanagan, 111 N.M. 93, 98, 801 P.2d 675, 680 (Ct.App.), cert. denied, 111 N.M. 77, 801 P.2d 659 (1990), and a pretrial motion in limine can hardly alert the court that a prediction in an opposing party's response to the motion turned out at trial to be incorrect. Requiring a trial objection in this context finds support in the general rule that when evidence is conditionally admitted over objection at trial, the objecting party must move to strike the evidence if the party offering the evidence does not later offer the foundation evidence necessary to satisfy the condition. See State v. Romero, 34 N.M. 494, 497, 285 P. 497, 498 (1930); Woolwine v. Furr's, Inc., 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987); C.T. Foster, Annotation, Necessity and Sufficiency of Renewal of Objection to, or Offer of, Evidence Admitted or Excluded Conditionally, 88 A.L.R.2d 12 (1963). Decisions that have found an objection preserved by a motion in limine appear to make the distinction I am suggesting. Thus, the Ninth Circuit Court of Appeals said, "Perhaps most important, there was nothing in the manner or context in which the [evidence was] introduced at trial that was unforeseen or that cast any doubt on the applicability of the trial court's in limine ruling." Palmerin v. City of Riverside, 794 F.2d 1409, 1413 (9th Cir.1986). Similarly, a leading case holding that a motion in limine may sometimes preserve an issue for appeal distinguishes between occasions when an objection at trial would be akin to a formal exception that serves no real purpose and when a trial objection would call "the court's attention to a matter it need consider." American Home Assurance Co. v. Sunshine Supermarket, 753 F.2d 321, 324 (3d Cir. 1985); see United States v. Cobb, 588 F.2d 607, 610-11 (8th Cir.1978), cert. denied, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979) (when issue not raised at trial, appellate court will review merits of motion in limine only on basis of information available to trial court at time of ruling on motion). I suspect that almost every jurisdiction would require a trial objection to preserve the issue raised regarding the intoxication evidence in this case.
When the intoxication evidence was offered at trial, Plaintiff should have objected that the defendants had failed to establish that intoxication was relevant because the defendants had not offered evidence that Denena could have avoided the accident. Perhaps it would have sufficed if at the close of evidence Plaintiff had moved to strike the evidence of intoxication. Yet Plaintiff followed neither of these avenues. Plaintiff's briefs have not directed this Court to any occasion during the course of the trial when he alerted the judge to his objection that the intoxication evidence should be excluded or stricken because the defendants had not established a proper foundation for its admission, nor has my review of the record uncovered such an objection. In these circumstances Plaintiff cannot complain of the admission of the intoxication evidence.
An additional comment is in order regarding the evidence that Buffett had used marijuana. The autopsy report noted the presence of THC in Buffett's blood. The trial judge granted Plaintiff's pretrial motion to exclude evidence of Buffett's use of marijuana. The judge indicated that the reference to THC in the autopsy report should be blacked out. At trial the judge excluded any reference to marijuana in testimony and in statements by counsel. It appears, however, that the judge had second thoughts about striking the reference to THC in the autopsy report. Perhaps the autopsy report was provided to the jury as an exhibit without any deletion of the reference to THC. But this cannot be determined from the record on appeal. The Plaintiff did not arrange for this Court to receive the trial exhibits. See SCRA 1986, 12-212(A) (Repl.1992). Thus, this issue too has not been preserved for *1028 appeal. See State v. Sacoman, 107 N.M. 588, 594, 762 P.2d 250, 256 (1988) (appellate court will not consider claim of error in trial court's denying access to records when records are not before appellate court for review).

4. Reversal Inappropriate on Basis of Improper Admission of Evidence of Denena's Intoxication
Finally, I will assume that there was insufficient evidence of proximate cause with respect to Denena and Buffett and that Plaintiff preserved at trial his objection to the evidence of intoxication. Accordingly, the evidence of intoxication would not have been admissible on the issue of liability. The evidence of Buffett's intoxication, however, would still be admissible on the issue of damages. In this circumstance would Plaintiff be entitled to a new trial against Mascarenas, Vargas, and Chacon?
I think not. As I have explained, a failure of proof that Denena and Buffett shared responsibility for the accident and injury would not in itself justify a new trial against Appellees. A new trial can be justified only if some error in the trial tainted the verdict in favor of Appellees. I fail to see how evidence of Denena's intoxication could have improperly persuaded the jury to find that Appellees were not liable. Perhaps evidence of Buffett's intoxication could prejudice the jury against him and cause the jury to be unduly sympathetic to Appellees (although it is unclear why such prejudice would be so finely tuned that it would lead to a verdict exonerating Appellees while imposing substantial liability on the defendant whose drunken driving was allegedly their responsibility), but such prejudice against Buffett is a most unlikely consequence of the evidence of Denena's intoxication. Improper admission of that evidence could not justify a new trial against Mascarenas, Vargas, and Chacon.

III. CONCLUSION
As I have indicated in the above discussion, the only ground discussed in the majority opinion that could justify a new trial against Appellees would be the improper admission of evidence of Buffett's intoxication. In my view, however, that evidence was admissible on the issues of both responsibility for the accident and damages, and Plaintiff failed to preserve his objection to the evidence. Therefore, I would not order a new trial as to the exonerated Appellees. I should also note that the verdict of zero damages does not establish that the jury was inflamed by passion or prejudice. Given the absence of any documentation of Buffett's prior employment or income and the absence of any testimony from former employers, the jury need not have believed that Buffett had ever held a job for more than a brief period of time or earned any substantial income. In accordance with the uniform jury instruction on the measure of damages for wrongful death, SCRA 13-1830, the jury could properly have found no "monetary worth" for his life because his after-tax income was unlikely to exceed his personal living expenses. I respectfully dissent.
NOTES
[1] Plaintiff, Bruce Buffett, for himself and as personal representative of the estate of his son, Boyd, instituted a lawsuit to recover damages for wrongful death, negligent infliction of emotional distress, and loss of companionship and services. Frank Jaramillo was named as a defendant in the action, as well as Fabian Mascarenas, an off-duty sheriff's deputy. Mascarenas' alleged liability was predicated on testimony establishing that he told an investigator that he was with Jaramillo immediately before the fatality and that Jaramillo was intoxicated but Mascarenas did not stop Jaramillo from driving. The investigator also discovered that, while intoxicated, Jaramillo had apparently purchased liquor at the Los Compadres liquor store prior to the accident. The owners of the Los Compadres, Martin Vargas and Albino Chacon, were named as defendants under the dram shop act. See NMSA 1978, § 41-11-1 (Repl.Pamp.1989).
[2] Defendants principally contented themselves with attacking the credibility of the only eyewitness by obtaining testimony to the effect that the passenger door that Ms. Ortiz claimed she opened immediately after the accident had to be opened by the rescue personnel with a hydraulic tool. Assuming the credibility attack was one hundred percent successful, and the probative value of the testimony of the eyewitness is considered eliminated, such does not establish direct evidence upon which a reasonable inference as to proximate cause may be founded.