914 P.2d 1004

Bruce BUFFETT, for himself and as personal representative of the Estate of Boyd Buffett, deceased, Plaintiff–Respondent,

v.

Martin VARGAS, Defendant–Petitioner.

Bruce BUFFETT, for himself and as personal representative of the Estate of Boyd Buffett, deceased, Plaintiff–Respondent,

v.

Fabian MASCARENAS, Defendant–Petitioner.

Bruce BUFFETT, for himself and as personal representative of the Estate of Boyd Buffett, deceased, Plaintiff–Respondent,

v.

Albino CHACON, d/b/a Los Compadres Supper Club, Defendant–Petitioner.

Nos. 21405, 21324 and 21660.

Supreme Court of New Mexico.

March 27, 1996.

508

Harold Worland, Albuquerque, NM, for Petitioner in No. 21405.

Paul M. Schneider, Law Offices, Legal Bureau/RMD, Santa Fe, NM, for Petitioner in No. 21324.

David Graham, Law Firm of David Graham, Taos, NM, for Petitioner in No. 21660.

The Branch Law Firm, Turner W. Branch, Albuquerque, NM, Rudolph B. Chavez, Albuquerque, NM, for Respondent.

## OPINION

FROST, Justice.

1. This case involves the all too common and tragic combination of drinking and driving. A head-on collision claimed the life of Boyd Buffett [hereinafter Boyd] and injured two others. The jury returned a verdict finding Boyd, one defendant, and one non-party each one-third at fault, and exonerating three other defendants. The Court of Appeals reversed for a new trial. We granted certiorari, and we now reverse the Court of Appeals.

### I. FACTS

2. In the early morning hours of October 19, 1985, Boyd was riding in an automobile driven by Peri Ann Denena. As they headed south on State Highway 3 near Taos, New Mexico, Defendant Frank Jaramillo was driving north on the same highway. Jaramillo's automobile swerved into Denena's lane and crashed head on into her car, injuring Denena and killing Boyd. The evidence showed that Denena's vehicle was traveling between forty-five and fifty miles per hour, and Jaramillo's vehicle was travelling about thirty miles per hour. The posted speed limit was forty-five.

3. Evidence adduced at trial showed that, at the time of the accident, Jaramillo had a blood-alcohol content (BAC) of approximately 0.34%, Denena had a BAC of approximately 0.225%, and Boyd had a BAC of approximately 0.244%. An autopsy report also revealed the presence in Boyd's blood of THC, the active ingredient in marihuana. At the time of the accident, the legal blood-alcohol limit for driving in this state was 0.1%.

NMSA1978, § 66–8–102(C) (Cum.Supp. 1985).[1]

4. Boyd died at the scene about ten minutes after the accident. He was survived by his father, Bruce Buffett [hereinafter Buffett], with whom Boyd lived before his death. Criminal charges against Denena were dropped, even though her BAC exceeded the legal limit, because, based on accident debris, gouge marks, and eyewitness testimony that Denena stayed entirely within her lane, there was no probable cause to believe that she was operating her vehicle while impaired by intoxication. Jaramillo pled guilty to vehicular homicide and served eighteen months of a three-year sentence.

5. Buffett brought this suit individually and as the personal representative of Boyd's estate. *See* NMSA1978, § 41–2–1 (Repl. Pamp.1989) (wrongful-death statute). Buffett sued not only Jaramillo but also Defendants–Appellants Fabian Mascarenas, Martin Vargas, and Albino Chacon. Denena was not a party to this action. Mascarenas was a police officer who was off duty at the time of the events at issue. Buffett contended that Mascarenas failed to prevent Jaramillo from driving during the evening of the accident even though Jaramillo was obviously intoxicated. Vargas and Chacon owned the bar from which Jaramillo allegedly obtained beer before the accident. *See* NMSA1978, § 41–11–1 (Repl.Pamp.1989) (dram-shop statute).

6. The district court consolidated the lawsuits against Jaramillo, Mascarenas, Vargas, and Chacon. The jury returned a special verdict apportioning fault equally one-third between Jaramillo, Denena, and Boyd, and awarded no damages. The jury affirmatively found no liability on the part of Mascarenas, Vargas, and Chacon. The trial judge corrected the amount of damages to $1,037.71, the amount of Boyd's funeral expenses. Buffett moved for a new trial, which the trial court denied.

7. Buffett then appealed to the Court of Appeals, which reversed and remanded for a new trial. *Buffett v. Jaramillo*, 121 N.M. 514, 914 P.2d 1011 (Ct.App.1993). Mascare-

nas, Vargas, and Chacon petitioned this Court for a writ of certiorari to review the decision of the Court of Appeals. We granted certiorari, and we now address the following issues decided by the Court of Appeals: whether the trial court properly admitted BAC evidence of Denena and Boyd; whether there was sufficient evidence to support the trial court's instruction to the jury that it could consider Denena's and Boyd's comparative negligence; and whether the exonerated codefendants should be subject to retrial. We reverse the Court of Appeals on these issues and remand for further consideration by the Court of Appeals of the issues that it did not address below.

## II. ADMISSIBILITY OF BLOOD–ALCOHOL EVIDENCE

■ 8. "We note at the outset that the trial court has 'a great deal of discretion in admitting or excluding evidence, and we will reverse the trial court only when it is clear that the court has abused its discretion.'" *Gonzales v. Surgidev Corp.*, 120 N.M. 133, 141, 899 P.2d 576, 584 (1995) (quoting *Behrmann v. Phototron Corp.*, 110 N.M. 323, 327, 795 P.2d 1015, 1019 (1990)). The trial court admitted evidence of the BACs of Boyd and Denena. The trial court excluded as irrelevant and unfairly prejudicial evidence of the presence of THC in Boyd's blood.

9. Buffett argued that the trial court should also have excluded the BAC evidence for both Boyd and Denena as irrelevant and unfairly prejudicial. The Court of Appeals agreed with Buffett, reversing the trial court. *Buffett*, at 526–527, 914 P.2d at 1023–1024. We, however, agree with the trial court and with Judge Hartz, who dissented from the Court of Appeals majority, that the BAC evidence was relevant and admissible. *See id.* at 528–529, 914 P.2d at 1025–1026.

### A. *Denena's Intoxication*

■ 10. For evidence of Denena's intoxication to be admissible, it must have been

---

**1.** In response to the state's serious drunk-driving problem, the New Mexico Legislature subsequently decreased the limit to 0.08%. 1993 N.M.Laws, ch. 66, § 7 (codified at NMSA1978, § 66–8–102(C) (Repl.Pamp.1994)) (effective Jan. 1, 1994).

relevant. *See* SCRA1986, 11–402 (Repl. Pamp.1994). In this case, the relevancy of the BAC evidence turned on whether or not Denena could have avoided the accident by exercising due care. If the accident had been completely unavoidable, then evidence of Denena's negligence would have been irrelevant because her negligence could not have contributed to the accident. On the other hand, if there was evidence presented supporting the inference that Denena could have prevented the accident by exercising due care, then any evidence tending to show that she failed to exercise due care was relevant. In this case, there was conflicting evidence whether or not Denena could have avoided the accident had she been sober and alert. The trial court admitted the BAC evidence, properly permitting the jury to resolve the conflicting facts. *See Martinez v. Scott*, 70 N.M. 354, 355, 374 P.2d 117, 118 (1962) (noting that it is the role of the jury to resolve conflicting facts).

11. Randy Wright, the police officer who investigated the accident scene, testified that the accident debris and gouge marks showed that Denena had begun to take evasive action shortly before the impact by turning toward the right shoulder. It is undisputed that the road at the accident scene was wide and flat and there was ample space on the shoulder where Denena could have driven safely to avoid Jaramillo's car. There was also evidence that, at Denena's level of intoxication, a person would have greatly slowed motor reactions. From this evidence, the jury could properly conclude that, since Denena was able to take some evasive action, a sober person might have avoided the collision altogether.

12. Buffett produced one eyewitness to the accident, Rose Ortiz. Ortiz testified that she was driving behind Denena's car in the same lane. Before the collision of Jaramillo's and Denena's vehicles, Ortiz observed a truck in front of Denena's car without tail-lights turn left, almost causing a collision. Denena and Ortiz both slowed and continued along the highway. Then Ortiz saw Jaramillo's car, proceeding in the opposite direction, suddenly swerve head on into Denena's vehicle. Ortiz testified that she did not observe Denena take evasive action because the collision happened too quickly. Ortiz stated that, if she had been driving Denena's car, she would not have been able to avoid the collision. Ortiz also testified that she had not consumed any alcohol and that she had not observed any erratic driving by Denena before the accident.

13. The defense, however, presented evidence that undermined Ortiz's credibility. Ortiz testified that she opened the front doors on Denena's car, but the emergency medical technicians who responded at the scene testified that they had to use a pry bar and the "Jaws of Life," a hydraulic rescue tool, to gain access to Denena's car because all the doors were jammed. Ortiz also testified that the collision occurred too quickly for Denena to take any evasive action; however, Officer Wright testified that Denena had in fact begun to take evasive action. In light of this conflicting evidence, the trial court did not err by admitting evidence of Denena's BAC as relevant to whether she was partially at fault.

### B. Boyd's Intoxication

14. Evidence of Boyd's intoxication must likewise have been relevant to be admissible. *See* SCRA 11–402. Boyd's intoxication is relevant if the jury could properly have inferred that it caused him to fail to exercise due care by voluntarily riding with a driver that he knew or should have known was impaired. The trial court instructed the jury:

A passenger has a duty to use ordinary care for his own safety. A passenger may not sit idly by and permit himself to be driven carelessly, to his injury, where there are dangers which are known to him or which reasonably should be known to him.

If you find that circumstances existed in this case which would cause a passenger, exercising ordinary care for his own safety, to keep a lookout or warn the driver, and that the plaintiff failed to do so, then such failure is negligence.

This is a correct instruction of New Mexico's law. *See* SCRA1986, 13–1207 (Repl. Pamp.1991); *Romero v. State*, 112 N.M. 291,

294, 814 P.2d 1019, 1022 (Ct.App.) [hereinafter *Romero I*] (approving instruction), *aff'd in part and rev'd in part,* 112 N.M. 332, 815 P.2d 628 (1991) [hereinafter *Romero II*].

15. In *Romero I,* 112 N.M. at 294, 814 P.2d at 1022, the Court of Appeals stated, "It is negligence to ride in a vehicle that one knows cannot be operated safely." Like Boyd, the passengers in *Romero I* had been drinking, and the defendants offered evidence regarding the passengers' BACs. The Court of Appeals ruled that the trial court improperly excluded the evidence. "Intoxication of the passenger may be relevant to the issue of the passenger's exercise of ordinary care for his or her own protection because intoxication reduces the passenger's appreciation of danger and increases the likelihood that the passenger will take a risk." *Id.*

16. This Court agreed with the Court of Appeals' analysis but reversed its conclusion, holding, "While the jury *might* have been served in evaluating this evidence by considering the effect of the passengers' intoxication on the passengers' decision to ride in an overcrowded vehicle, we cannot say, as the court of appeals did, that the jury *should* have considered this effect." *Romero II,* 112 N.M. at 333, 815 P.2d at 629. Thus, this Court's opinion in *Romero II* stands for the proposition that determining the relevancy of a passenger's BAC evidence is within the sound discretion of the trial court, which an appellate court should not reverse absent an abuse of that discretion. *Id.*

17. In this case, we cannot say that the trial court abused its discretion in admitting the BAC evidence, in light of the conflicting evidence regarding whether Denena's and Boyd's negligence contributed to the accident. Shortly before the accident Boyd and Denena had left a nightclub where she worked. The defense presented expert testimony that a person with Denena's BAC would have great difficulty walking in a coordinated manner, would be irrational, and would black out or pass out.

18. Based on this evidence, the jury could reasonably have inferred that Boyd knew or should have known that Denena was too intoxicated to drive safely. Consequently, evidence of Boyd's intoxication was relevant to the issue of his negligence in riding with Denena, given her intoxicated condition. The jury could properly find that Boyd was negligent by failing to exercise ordinary care for his own safety. The trial court therefore did not err by admitting evidence of Boyd's BAC.

### III. SUFFICIENCY OF EVIDENCE

19. Buffett also argued that there was insufficient evidence, as a matter of law, to support the trial court's instruction to the jury that it could consider Denena's and Boyd's negligence, because the evidence failed to establish a causal connection between their negligence and the accident. In other words, Buffett argued that nothing Denena or Boyd did or failed to do contributed in any way to the accident. "The sufficiency of evidence presented to support a legal claim or defense is a question of law for the trial court to decide." *Sunwest Bank, N.A. v. Garrett,* 113 N.M. 112, 115, 823 P.2d 912, 915 (1992). A trial court may instruct a jury on a party's theory of the case only when there is sufficient evidence to support each element of the theory. *Romero v. Mervyn's,* 109 N.M. 249, 253–54, 784 P.2d 992, 996–97 (1989).

20. Thus, there must have been sufficient evidence to support a finding that Denena's and Boyd's negligence was a causal factor in the accident. We have concluded that the trial court properly admitted the challenged BAC evidence. Also, as we have discussed, there was circumstantial evidence that Denena could have avoided the accident had she been sober. The evidence was conflicting, and the trial court properly permitted the jury to resolve the conflicting facts. *Martinez,* 70 N.M. at 355, 374 P.2d at 118. Under the facts of this case, the evidence properly before the jury was sufficient to support the jury instruction regarding the comparative fault of Denena and Boyd.

### IV. RETRIAL OF MASCARENAS, VARGAS, AND CHACON

21. After the Court of Appeals found that the trial court committed reversible error by

admitting the BAC evidence and by instructing the jury to consider the comparative fault of Denena and Boyd, the Court concluded that a new trial was necessary, not only as to Defendant Frank Jaramillo, but also as to Defendants–Appellants Fabian Mascarenas, Martin Vargas, and Albino Chacon. Although we need not reach the retrial issue because we reverse the Court of Appeals on the first two issues, we provide guidance to the Court of Appeals because the issue of retrial may arise on remand.

### A.  The Police Officer

22.  Sometime during the evening before the accident, Jaramillo was driving his car when he saw his cousin and next-door neighbor, Fabian Mascarenas, out jogging. Mascarenas was a deputy sheriff for the Taos County Sheriff's Department, but he was off duty and out of uniform at the time. Mascarenas got into Jaramillo's car and accompanied him to Los Compadres Supper Club, a bar in Taos. Mascarenas waited in the car for several minutes while Jaramillo went briefly into Los Compadres. Then Jaramillo drove Mascarenas back home, and Jaramillo left in his car.

23.  Aside from these basic, general facts, the parties presented very different accounts of Mascarenas's encounter with Jaramillo. The parties dispute, among other things, when Mascarenas and Jaramillo met and whether Jaramillo was noticeably intoxicated at the time. Buffett sued Mascarenas both as an individual and in his capacity as a police officer. Before trial, the trial court granted summary judgment in favor of Mascarenas individually, but denied Mascarenas summary judgment in his official capacity.[2] The jury returned a special verdict finding that Mascarenas was not at fault.

### B.  The Bar Owners

24.  Buffett also sued Martin Vargas and Albino Chacon. Vargas owned and operated Los Compadres Supper Club, and Chacon owned a one-half interest in the bar's liquor license and a one-third interest in the bar's

building. Chacon did not participate at all in the management or daily operation of Los Compadres. Instead, Vargas managed the bar and paid Chacon monthly rent. Los Compadres sold carry-out, package beer, in addition to serving alcoholic beverages for consumption in the bar.

25.  In an interview, Jaramillo told Buffett's private investigator that, on the night of the accident, he went to Los Compadres to cash a paycheck and to purchase beer. At trial Jaramillo stated that he did not actually recall whether he cashed a check or purchased beer at Los Compadres that evening, and that he gave a different account to the private investigator only because he felt pressured to give an answer. Vargas admitted that Jaramillo was in the bar that evening, but denied either cashing a check for Jaramillo or serving him beer because, Vargas said, Jaramillo was too intoxicated and the bar did not serve intoxicated customers.

26.  Because Chacon was not present at Los Compadres that evening and was not personally involved in the bar's management and operation, the trial court instructed the jury that, as a precondition to finding Chacon liable, it had to find the existence of an agency or employment relationship between Chacon and Fred Archuleta, the bartender who allegedly served Jaramillo. The jury specially found that Archuleta was not Chacon's agent or employee. In addition, the jury found that Vargas was not individually or vicariously liable.

### C.  Retrial

■ 27.  After finding reversible error, the Court of Appeals remanded for a new trial as to all defendants. Apparently the Court reasoned that the doctrine of comparative negligence requires retrial of all defendants, even when error is found only as to one. *Buffett*, at 530–531, 914 P.2d at 1027–1028. We agree that, when the jury has apportioned fault between several negligent parties and error infects the verdict as to one, retrial may be appropriate as to the other negligent party. However, when the

---

**2.**  Mascarenas actually presented this issue to the trial court in a motion for judgment on the pleadings. However, this motion referred to

matters outside the pleadings, so we treat it as a motion for summary judgment. *See* SCRA1986, 1–012(C) (Repl.Pamp.1992).

jury has found one of the parties not to be negligent, that party should not automatically be subject to retrial with respect to apportioning fault.

28. For example, if the jury finds that Defendant A is sixty percent at fault and Defendant B is forty percent at fault, and the appellate court decides that reversible error was committed as to Defendant B, then Defendant A could be required to stand retrial if the jury likely would have apportioned the fault differently had the error not been committed. *Miera v. George,* 55 N.M. 535, 543, 237 P.2d 102, 107 (1951). Retrial of Defendant A would be particularly appropriate when the facts as to each are closely intertwined, as in a multicar traffic accident. *See Williams v. Slade,* 431 F.2d 605, 608–09 (5th Cir.1970) (involving multicar traffic accident).

29. However, retrial of Defendant A would not always be appropriate, especially when, as in this case, the jury had exonerated the defendant. The New Mexico Rules of Civil Procedure permit a partial retrial, stating, "A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted." SCRA1986, 1–059(A) (Repl.Pamp.1992). In *Sanchez v. J. Barron Rice, Inc.,* 77 N.M. 717, 427 P.2d 240 (1967), this Court recognized that a party exonerated at trial should not automatically be subjected to a new trial whenever there has been an error at trial with regard to the liability of someone else.

30. In *Sanchez,* Josephine Sanchez died from carbon-monoxide poisoning. The administrator of her estate sued three defendants under the wrongful death statute. One defendant manufactured the furnace that allegedly caused the death. A second defendant, R & H Enterprises, Inc., purchased the furnace from the first defendant and installed it in the house that the third defendant sold to the victim's father. Each defendant was sued for negligence and breach of implied warranty. The jury rendered verdicts in favor of all three defendants. The Court, finding error in the admission and exclusion of evidence relevant to the negligence of R & H, ordered a new trial on the claim of negligence against R & H. As for the other defendants, the Court wrote, "The warranty claims and the negligence claims against [the two other defendants] are severable from the negligence claim against R & H. Being severable and having been decided, they need not be retried." *Id.* at 725, 427 P.2d at 246.

31. This result does not change with the adoption of comparative negligence when one defendant has been exonerated. Other jurisdictions have addressed the issue of retrial of an exonerated defendant in a comparative negligence case. In *Methodist Hospitals v. Sullivan,* 714 S.W.2d 302, 303 (Tex.1986) (per curiam), the Texas Supreme Court decided, "In a multiple defendant case, when one defendant is not found negligent by the jury, and an appeals court leaves that finding intact, remand is improper for the defendant whose liability in negligence has been determined." *Accord State Dep't of Highways & Pub. Transp. v. Pruitt,* 752 S.W.2d 598, 602 (Tex.Ct.App.1988).

32. The Idaho Supreme Court has stated that "the test for determining whether a party can be excluded from an order for a new trial is whether there is a clear showing that the issues in the case are so distinct and separable that a party may be excluded without prejudice." *Watson v. Navistar Int'l Transp. Corp.,* 121 Idaho 643, 827 P.2d 656, 682 (1992) (holding that, under facts of case, juror misconduct infected verdict as to all parties); *see also State v. Municipality of Anchorage,* 805 P.2d 971, 974–75 (Alaska 1991) (holding in personal injury case that exonerated municipality need not be retried with codefendant State). This test is the same as New Mexico's test for determining whether a partial retrial is appropriate as to some issues but not others. *See Sanchez v. Dale Bellamah Homes, Inc.,* 76 N.M. 526, 530–31, 417 P.2d 25, 28–29 (1966) (using same test to evaluate propriety of partial retrial on issue of damages). Thus, the *Watson* test fits well with our existing jurisprudence, and we adopt it.

33. The Court of Appeals did not apply this test in determining whether it was appropriate for Mascarenas, Vargas, and Chacon to stand retrial. Consequently, on remand, the Court should first determine

whether the trial court committed reversible error as to any of the issues not addressed in this opinion, for example, juror bias, alleged violation of the trial court's motion in limine, and damages, among others. Then the Court should decide whether this error, if any, infected the verdicts exonerating Mascarenas, Vargas, and Chacon.

## V. CONCLUSION

34. For the foregoing reasons we reverse the Court of Appeals. We remand this case to the Court of Appeals for further proceedings consistent with this opinion.

35. **IT IS SO ORDERED.**

FRANCHINI and MINZNER, JJ., concur.