# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

DOUGLAS E. SAMUELSON, )
as the Natural Father and )
Personal Representative of )
KEVIN L. SAMUELSON, )
)
    Plaintiff/Appellant, )
) Davidson Circuit
) No. 89C-2581
VS. )
) Appeal No.
) 01-A-01-9602-CV-00060
CECIL E. McMURTRY, M.D., )
WILLIAM A. HOLLAND, JR., M.D., )
H.C.A. HEALTH SERVICES OF )
TENNESSEE, INC., d/b/a DONELSON )
HOSPITAL EMERGICARE, INC., )
)
    Defendants, )
)
and )
)
MARK S. TOTTY, Individually and )
d/b/a MARK S. TOTTY, D.C., P.C., )
)
    Defendant/Appellee. )

FILED

September 6, 1996

Cecil W. Crowson
Appellate Court Clerk

## DISSENTING OPINION

This appeal involves one of the central principles of our comparative fault system - that all persons involved in an occurrence giving rise to injury or damages should have their rights and liabilities determined in one action. Douglas Samuelson perfected this appeal solely to obtain appellate review of the summary dismissal of his malpractice claim against one of several defendants on the day of trial. Rather than deciding this question, the majority has decided that the jury's verdict with regard to the remaining parties somehow forecloses Mr. Samuelson from ever obtaining relief from the defendant who was removed from the case even before the trial started. I cannot agree with this decision.

I.

Kevin Samuelson died from an aggressive, undiagnosed case of pneumonia on August 2, 1988. His father, Douglas E. Samuelson, brought a wrongful death action against Drs. Cecil E. McMurtry and William A. Holland, Jr., physicians who treated his son during the weeks before his death, H.C.A. Health Services of Tennessee, Inc., and Dr. Mark S. Totty, a chiropractor who treated his son the day before he died. The complaint alleged that Drs. McMurtry and Holland had misdiagnosed Kevin Samuelson's pneumonia, that an employee of a hospital owned by H.C.A. Health Services had wrongfully refused to treat Kevin Samuelson, and that Dr. Totty had negligently failed to refer Kevin Samuelson to a physician for treatment.

Dr. Totty filed a motion for summary judgment in June 1992 supported by his own affidavit in which he asserted that he had "acted with ordinary and reasonable care in accordance with the standards of the chiropractic profession" and that he "conducted no negligent act or omission which was the proximate result of Mr. Samuelson's death." Mr. Samuelson opposed the motion with the deposition of Dr. Jack R. Uhrig, a physician licensed to practice in Missouri, and the affidavit of Dr. Robert E. Cunningham, a chiropractor licensed to practice in Georgia. On August 25, 1992, the trial court entered an order finding that Dr. Totty was not entitled to a summary judgment on the negligence issue but that he was entitled to a summary judgment on the issue of proximate cause because the undisputed facts demonstrated that his conduct did not cause Kevin Samuelson's death.

Mr. Samuelson requested the trial court to reconsider its decision based on (1) additional affidavits from Drs. Uhrig and Cunningham, (2) a new affidavit from Dr. Gerald Donowitz, a Virginia physician specializing in infectious diseases, and (3) Dr. Totty's deposition. Dr. Donowitz stated in his affidavit that Kevin Samuelson's condition was "reversible within approximately 6 to 12 hours of his death." The trial court adhered to its original decision based on its conclusion that the evidence was undisputed that Kevin Samuelson had informed Dr. Totty that he was already under the care of a physician.

The trial court certified its order granting Dr. Totty's summary judgment as a final order, and Mr. Samuelson appealed to this court. On September 8, 1993, we reversed the summary judgment on the grounds that Dr. Cunningham's affidavits made out a prima facie case of negligence and that Dr. Donowitz's affidavit created a material factual issue with regard to causation. *Samuelson v. McMurtry,* App. No. 01-A-01-9301-CV-00023, slip op. at 10, 11 (Tenn. Ct. App. Sept. 8, 1993) (No Tenn. R. App. P. 11 application filed). Dr. Totty did not challenge Dr. Cunningham's expert qualifications at this stage of the proceeding.

Once the case was remanded, Dr. Totty set out to undermine Dr. Cunningham's credibility and qualifications to testify as an expert. In October 1994, the case was set for trial on April 17, 1995. On March 1, 1995, approximately one year after Dr. Cunningham's deposition, Mr. Samuelson served interrogatories on Dr. Totty seeking to discover whether Dr. Totty intended to challenge Dr. Cunningham's qualifications. In response, Dr. Totty filed a motion in limine on March 28, 1995, seeking to prevent Dr. Cunningham from testifying because he did not meet the practice requirements in Tenn. Code Ann. § 29-26-115(b) (1980).[1] The trial court heard Dr. Totty's motion on March 31, 1995 but deferred acting on it until the day of trial.

The trial court took up Dr. Totty's motion in limine again on the morning of trial and decided that Dr. Cunningham could not testify as an expert because he did not meet the requirements of Tenn. Code Ann. § 29-26-115(b) and because his opinion would not materially assist the trier-of-fact. Dr. Totty threatened to seek sanctions against Mr. Samuelson if he required him to remain in the case after the trial court denied Mr. Samuelson's motions to waive the requirements of Tenn. Code Ann. § 29-26-115(b) and for a continuance. Realizing the impact of its ruling on the allocation of fault among the parties, the trial court requested the parties to consider severing the claims against Dr. Totty from those against the other defendants.

---

[1]Tenn. Code Ann. § 29-26-115(b) provides that a licensed professional cannot give an expert opinion in a medical malpractice action unless he or she "was licensed to practice in the state or a contiguous bordering state . . . during the year preceding the date that the alleged injury or wrongful act occurred."

After the parties would not agree to sever the claims, Dr. Totty moved to "reopen" his June 17, 1992 motion for summary judgment or to dismiss the claims against him pursuant to his affirmative defense that Mr. Samuelson had failed to state a claim upon which relief could be granted. Mr. Samuelson opposed both motions by pointing out that they came long after the deadline for filing dispositive motions and that he intended to attempt to prove his claims against Dr. Totty without Dr. Cunningham's testimony. Over Mr. Samuelson's objections, the trial court severed his claims against Dr. Totty and then "reconsidered" and granted Dr. Totty's motion for summary judgment and motion to dismiss.[2] Even though none of the proof had been presented, the trial court explained that it could not "see anything to gain from requiring Dr. Totty . . . to remain in this action when it appears that a motion for directed verdict at the conclusion of the plaintiff's case is going to be granted."

Mr. Samuelson then proceeded to trial against Drs. McMurtry and Holland and H.C.A. Health Services. While Dr. Totty and one of his employees were called as fact witnesses, neither Mr. Samuelson nor the remaining defendants attempted to prove or argue that Dr. Totty was in any way responsible for Kevin Samuelson's death.[3] The jury was asked to determine whether Drs. McMurtry or Holland or H.C.A. Health Services had negligently deviated from the recognized standard of care and whether their negligence had proximately caused Kevin Samuelson's death. The jury was also asked to allocate fault between Kevin Samuelson and any of the parties whose fault caused Kevin Samuelson's death. The jury found that Dr. McMurtry and H.C.A. Health Services had not been negligent but that Dr. Holland had been negligent and that his negligence was a proximate cause of Kevin Samuelson's death. Accordingly, the jury allocated

---

[2]The trial noted in doing so that it was "cognizant of the Court of Appeals' ruling where they relied heavily upon Dr. Cunningham's affidavit."

[3]This should not be surprising. Mr. Samuelson certainly was not going to attempt to apportion fault to a party who had been dismissed from the case over his objection. None of the remaining defendants could argue that Dr. Totty had caused or contributed to Kevin Samuelson's death because they had not included the appropriate cross-claims in their original answers and had not amended their answers to lay off part or all of the fault on Dr. Totty as permitted by Tenn. Code Ann. § 20-1-119 (1994).

51% of the fault to Dr. Holland and 49% of the fault to Kevin Samuelson.[4] The jury also found that Mr. Samuelson's total damages were $500,000, and accordingly the trial court awarded Mr. Samuelson a $255,000 judgment against Dr. Holland.

Dr. Holland moved for a judgment notwithstanding the verdict and for a new trial. Mr. Samuelson filed a Tenn. R. Civ. P. 59.04 motion requesting the trial court to vacate the dismissal of his claims against Dr. Totty.[5] The trial court denied the post-trial motions but remitted the judgment against Dr. Holland to $204,000. Mr. Samuelson later certified that this judgment had been fully satisfied.

Mr. Samuelson perfected this appeal to take issue with the trial court's decision to disqualify Dr. Cunningham as an expert witness and to dismiss his claims against Dr. Totty rather than permitting him to proceed to trial. Even though the majority does not disagree that the soundness of these decisions are substantially in doubt,[6] they have decided that it is unnecessary to address these issues because Mr. Samuelson's acceptance of the judgment against Dr. Holland prevents him from ever proceeding against Dr. Totty based on the doctrines of res judicata and collateral estoppel.

I cannot agree with the majority's decision. It is a misapplication of the doctrines of res judicata and collateral estoppel in a comparative fault environment. I would first determine whether the trial court's exclusion of Dr.

---

[4]The record contains no explanation of the jury's decision to allocate 49% of the fault to Kevin Samuelson. Mr. Samuelson hypothesized in this court that the jury must have decided that his son should have returned to the hospital rather than consulting a chiropractor on August 1, 1988.

[5]Mr. Samuelson supported his motion with an affidavit from another chiropractor licensed to practice in Georgia stating that Dr. Totty had breached the applicable standard of care and that Dr. Totty's failure to immediately refer Kevin Samuelson to a physician for emergency treatment was a proximate cause of Kevin Samuelson's death.

[6]This court had already overturned the earlier summary judgment for Dr. Totty. Likewise, Dr. Totty had not challenged Dr. Cunningham's ability to testify as an expert in these earlier proceedings and had waited until after the deadline for filing dispositive motions to seek to prevent Dr. Cunningham from testifying. In addition, the trial court did not afford Mr. Samuelson the time to respond to Dr. Totty's "reopened" motion for summary judgment required in Tenn. R. Civ. P. 56.03 and the local Davidson County rules.

Cunningham and its dismissal of the claims against Dr. Totty were error. If these decisions are incorrect, I would proceed to determine whether these errors more likely than not affected the jury's verdict.

## II.

The Tennessee Supreme Court's enactment of a system of comparative fault drastically transformed tort law in Tennessee. *Whitehead v. Toyota Motor Corp.,* 897 S.W.2d 684, 686 (Tenn. 1995). The Court desired to replace the "outmoded and unjust common law doctrine of contributory negligence," *McIntyre v. Balentine,* 833 S.W.2d 52, 56 (Tenn. 1992), with a doctrine that more closely linked fault and liability. *Owens v. Truckstops of Am.,* 915 S.W.2d 420, 430 (Tenn. 1996). Accordingly, it concluded that a modified comparative fault system without joint and several liability would more fairly and efficiently[7] (1) provide full compensation for injured plaintiffs reduced in proportion to the damages properly attributable to them, *Owens v. Truckstops of Am.,* 915 S.W.2d at 430; *McIntyre v. Balentine,* 833 S.W.2d at 58 (doctrine of contributory negligence completely denied injured litigants recompense for their damages), and (2) assure that culpable parties would be liable for only their fair share of the total negligence or fault. *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d 79, 83 (Tenn. 1996); *Whitehead v. Toyota Motor Corp.,* 897 S.W.2d at 686; *Volz v. Ledes,* 895 S.W.2d 677, 680 (Tenn. 1995); *McIntyre v. Balentine,* 833 S.W.2d at 58.

The Court has repeatedly acknowledged that it left many significant questions concerning its new comparative fault system unanswered. *Eaton v. McLain,* 891 S.W.2d 587, 593 (Tenn. 1994); *McIntyre v. Balentine,* 833 S.W.2d at 57. Among the issues requiring more detailed judicial scrutiny were questions relating to the consideration of the fault of non-parties and to the joinder of potentially culpable parties. During the four intervening years since the *McIntyre v. Balentine* decision, the Court has provided additional insight into the answers to these questions.

---

[7]The concepts of fairness and efficiency are the basis for the comparative fault system. *Owens v. Truckstops of Am.,* 915 S.W.2d at 424.

We now understand that there is a theoretical distinction between the concepts of "comparative negligence" and "comparative fault." Comparative negligence refers to the apportionment of damages attributable to the plaintiff as against the culpable defendants. Comparative fault refers to the process of apportioning damages among multiple or joint tortfeasors according to the percentage of fault attributable to those persons. *Owens v. Truckstops of Am.,* 915 S.W.2d at 425 n.7.

In addition, the Court has articulated four principles with regard to the apportionment of fault or awarding damages against non-parties. First, fault may be apportioned only to persons against whom the plaintiff has a cause of action. *Owens v. Truckstops of Am.,* 915 S.W.2d at 428; *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d at 83. Second, fault may be apportioned to both parties and non-parties. *Volz v. Ledes,* 895 S.W.2d at 680. Third, the plaintiff bears the risk of not joining a potentially liable tortfeasors against whom it has a cause of action. *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d at 83; *Volz v. Ledes,* 895 S.W.2d at 680. Fourth, failure to identify potentially liable tortfeasors who are not already parties as required by Tenn. Code Ann. § 20-1-119(a) will prevent defendants from attributing fault to these non-parties. *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d at 84.

Based on these principles and Tenn. R. Civ. P. 8.03[8] and Tenn. Code Ann. § 20-1-119,[9] the Court has pointed out that "[t]he goals of efficiency and fairness are . . . served by joining as defendants all persons against whom the plaintiff can assert a cause of action." *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d at 84. This holding is consistent with the modern trend to combine in one action for trial all claims and actions involving all potentially liable persons. The Court, however, has not yet adopted the "one-action rule" which would prevent plaintiffs from bringing subsequent actions against persons who were not sued in the original action.

---

[8]Tenn. R. Civ. P. 8.03 requires defendants in comparative fault cases to plead as an affirmative defense "the identity or description of any other alleged tortfeasors."

[9]Tenn. Code Ann. § 20-1-119(a) permits plaintiffs to amend their complaint to add other alleged tortfeasors named or identified by a defendant in accordance with Tenn. R. Civ. P. 8.03.

Several comparative fault jurisdictions have adopted the "one-action rule" either by statute or judicial fiat.[10] The courts in these jurisdictions have frequently relied on preclusion doctrines such as res judicata or collateral estoppel to justify their reliance on the rule. They assert that there can be no second successive trial in comparative negligence cases where one hundred percent of the fault was allocated in the first trial. *Kathios v. General Motors Corp.,* 862 F.2d 944, 951 (1st Cir. 1988); *Albertson v. Volkswagenwerk Aktiengesellschaft,* 634 P.2d 1127, 1132 (Kan. 1981). However, other jurisdictions have specifically declined to use traditional preclusion doctrines to prevent a subsequent trial in a comparative fault case. *Drescher v. Hoffman Motors Corp.,* 585 F. Supp. 555, 558 (D. Conn. 1984); *Norris v. Atlanta & W.P.R.R.,* 333 S.E.2d 835, 837-38 (Ga. 1985); *Selchert v. State,* 420 N.W.2d 816, 818 (Iowa 1988); *Oldaker v. Peters,* 869 S.W.2d 94, 97-98 (Mo. Ct. App. 1993). Even jurisdictions that follow the "one-action rule" do not apply it when the plaintiff was prevented from proceeding against a culpable party in the first action. *Anderson v. Scheffler,* 752 P.2d 667, 672 (Kan. 1988).

Mr. Samuelson did not engage in the strategic, inefficient behavior that prompted the "one-action rule."[11] He sued all persons whose conduct could have caused or contributed to his son's death. Thus, this case does not provide a proper vehicle for determining whether Tennessee should align itself with the jurisdictions following the "one-action rule."[12] This discussion of the rule is relevant, however, because it rests on the same preclusion doctrines deemed controlling by the majority in this case.

---

[10]John S. Hickman, Note, *Efficiency, Fairness, and Common Sense: The Case for One Action as to Percentage of Fault in Comparative Negligence Jurisdictions That Have Abolished or Modified Joint and Several Liability,* 48 Vand. L. Rev. 739, 753 (1995); David Polin, Annotation, *Comparative Negligence: Judgment Allocating Fault in Action Against Less Than All Potential Defendants as Precluding Subsequent Action Against Parties Not Sued in Original Action,* 4 A.L.R.5th 753 (1992).

[11]Hickman, *supra* note 10, at 750 (plaintiffs will keep a defendant in reserve to obtain a second chance at a satisfactory recovery if the first trial did not result in a sufficient judgment).

[12]Tenn. R. Civ. P. 19.01 requires persons subject to the court's jurisdiction to be joined as parties if complete relief cannot be accorded to the existing parties in their absence or if their absence will subject the existing parties to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. In light of the Tennessee Supreme Court's observation that efficiency and fairness are best served by joining all potential defendants in one action, *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d at 84, it could be argued that all persons who are potentially liable to a plaintiff are indispensable parties under Tenn. R. Civ. P. 19.

# III.

The majority has decided that the doctrines of res judicata and collateral estoppel prevent Mr. Samuelson from proceeding against Dr. Totty because he has already obtained a judgment against Dr. Holland. I cannot agree because the necessary ingredients for both of these defenses are lacking in this case.

# A.

Res judicata and collateral estoppel are preclusionary doctrines. Res judicata is a claim preclusion doctrine that bars a second suit between the same parties or their privies on the same cause of action with regard to all issues that were or could have been litigated in the former suit. *Richardson v. Tennessee Bd. of Dentistry,* 913 S.W.2d 446, 459 (Tenn. 1995); *Massengill v. Scott,* 738 S.W.2d 629, 631 (Tenn. 1987); *Collins v. Greene County Bank,* 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995). Under the res judicata doctrine, plaintiffs who prevail on their original claim cannot thereafter maintain a new action against the same defendants or their privies on their original claim or any part thereof. *National Cordova Corp. v. City of Memphis,* 214 Tenn. 371, 380, 380 S.W.2d 793, 797 (1964); Restatement (Second) of Judgments § 18(1) (1980). Plaintiffs may, however, pursue other similar claims against other parties, Restatement (Second) of Judgments § 49, except to the extent that these claims involve the relitigation of issues determined adversely to the plaintiff in the prior action. Restatement (Second) of Judgments §§ 29 & 49 cmt. a.

On the other hand, collateral estoppel is an issue preclusion doctrine that bars the same parties or their privies from relitigating in a second suit issues that were actually litigated and determined in a former suit. *Dickerson v. Godfrey,* 825 S.W.2d 692, 694 (Tenn. 1992); *Goeke v. Woods,* 777 S.W.2d 347, 349 (Tenn. 1989); *Allied Sound, Inc. v. Neely,* 909 S.W.2d 815, 820 (Tenn. Ct. App. 1995). The doctrine does not apply to issues that were not necessary for the decision in the former case, *Scales v. Scales,* 564 S.W.2d 667, 670 (Tenn. Ct. App. 1977), or when the party against whom preclusion is sought did not have a full and fair opportunity to litigate the issue in the prior suit. *Morris v. Esmark Apparel, Inc.,*

832 S.W.2d 563, 566 (Tenn. Ct. App. 1991); Restatement (Second) of Judgments § 29.

Both doctrines require identity between the parties or their privies. In this context, privity relates to the subject matter of the litigation. *Harris v. St. Mary's Medical Ctr., Inc.,* 726 S.W.2d 902, 905 (Tenn. 1987); *Shelley v. Gipson,* 218 Tenn. 1, 7, 400 S.W.2d 709, 712 (1966). Accordingly, a defendant's verdict in a breach of warranty action against an automobile dealer barred the relitigation of the same claim against the automobile's manufacturer because the dealer and the manufacturer were in privity with regard to the warranty on the automobile. *Phillips v. General Motors Corp.,* 669 S.W.2d 665, 669 (Tenn. Ct. App. 1984). But by the same token, a prior verdict in favor of one emergency room physician did not bar a second suit against the hospital, another emergency room physician, and other hospital employees. *Harris v. St. Mary's Medical Ctr., Inc.,* 726 S.W.2d at 905.

**B.**

Neither res judicata nor collateral estoppel bars Mr. Samuelson's claims against Dr. Totty under the facts of this case. While Dr. Totty was originally a party to Mr. Samuelson's suit, he became a non-party once the trial court summarily dismissed Mr. Samuelson's claims against him prior to trial. Nor was he in privity with Dr. Holland, Dr. McMurtry, or H.C.A. Health Services. Dr. Totty's alleged negligent acts did not occur at the hospital, and the proof with regard to his conduct was not necessary for the adjudication of Mr. Samuelson's claims against Drs. Holland and McMurtry or H.C.A. Health Services. In fact, the proof required for Mr. Samuelson's case against Dr. Totty was substantially different than the proof required for his claims against the other defendants.

The issues involved in Mr. Samuelson's first suit were likewise not the same as the issues involved in his second suit against Dr. Totty. The only issues involved in Mr. Samuelson's first suit related to Kevin Samuelson's negligence vis à vis Drs. Holland and McMurtry and H.C.A. Health Services. Kevin

Samuelson's negligence vis à vis Dr. Totty was not a part of these proceedings and thus was not adjudicated either directly or indirectly. Other comparative fault jurisdictions have followed this reasoning and have held that the adjudication of fault between the plaintiff and one defendant did not preclude the plaintiff's second action against another defendant. *Drescher v. Hoffman Motors Corp.,* 585 F. Supp. at 558; *Selchert v. State,* 420 N.W.2d at 821; *Oldaker v. Peters,* 869 S.W.2d at 97.

The majority's reliance on *Cantrell v. Burnett & Henderson Co.,* 187 Tenn. 552, 216 S.W.2d 307 (1948), is misplaced. In that case, the purchaser of an automobile that caught fire three days after purchase filed suit against the manufacturer and the dealer alleging that the automobile was defective. The case proceeded to trial against both defendants, but the trial court directed a verdict for the manufacturer before the case went to the jury. After the jury found that the automobile was not defective and returned a verdict for the dealer, the purchaser appealed the trial court's decision to grant a directed verdict for the manufacturer. The Tennessee Supreme Court, in a rare opinion explaining its reasons for denying a writ of certiorari, held that the verdict for the dealer estopped the purchaser from proceeding against the manufacturer on the same theory because the jury had already determined that the fire that destroyed the automobile was not caused by a defect. *Cantrell v. Burnett & Henderson Co.,* 187 Tenn. at 558-59, 216 S.W.2d at 310.

The *Cantrell* decision illustrates a correct application of issue preclusion because, as pointed out by Judge Goddard, both cases involved precisely the same issue and because the manufacturer was in privity with the dealer with regard to the issue determined in the first suit. *Phillips v. General Motors Corp.,* 669 S.W.2d at 669. No similar identity of parties or issues exists in this case. Dr. Totty was not in privity with the defendants in the first suit, and the issues involved in the first suit bore no relationship to Mr. Samuelson's claims against Dr. Totty.

**IV.**

Based on the foregoing, I would find that the judgment against Dr. Holland does not prevent this court from considering whether the trial court erred by summarily dismissing Mr. Samuelson's claims against Dr. Totty. If the trial court's decision was correct, then we need not proceed further. If, however, we conclude that the trial court erred, we must consider whether the error affected the verdict and, if it did, we must also fashion appropriate relief. In this transitional case, we must apply the comparative fault principles fairly to avoid substantial injustice to any of the parties. *Owens v. Truckstops of Am.,* 915 S.W.2d at 424; *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d at 80.

Mr. Samuelson would be entitled to a new trial against Dr. Totty if the trial court erred by summarily dismissing his claims against Dr. Totty. However, in addition to depriving Mr. Samuelson of a trial against Dr. Totty, the trial court's error would also have prevented the jury from apportioning negligence between Kevin Samuelson and the other named defendants. Thus, the error could very well have prejudiced the remaining defendants by depriving them of their opportunity to lay off all or a portion of the fault to others and by exposing them to liability for more than their fair share of damages.[13] It is evident that the erroneous exclusion of a defendant against whom a plaintiff has a colorable claim strikes at the heart of the policy favoring single trials involving all proper parties in comparative fault cases. We must, therefore, also decide whether the erroneous exclusion of a properly named defendant affects the judgment against the remaining defendants.

Most courts in comparative fault jurisdictions have found that the erroneous dismissal of one defendant affects the verdict against the remaining defendants, *see, e.g., Williams v. Slade,* 431 F.2d 605, 608, 609 (5th Cir. 1970); *Buffett v. Vargas,* 914 P.2d 1004, 1009 (N.M. 1996), and that the courts can only speculate about what the jury might have done had all defendants been before the court in a single proceeding. *Fitzhugh v. Elliott,* 371 S.W.2d 533, 535 (Ark. 1963);

---

[13]The defendants would have been exposed to this prejudice had the case been commenced after the enactment of Tenn. Code Ann. § 20-1-119 and the adoption of the amendments to Tenn. R. Civ. P. 8.03. However, this case was commenced before the *McIntyre v. Balentine* decision, and the defendants never claimed that Kevin Samuelson's death was caused in whole or in part by others.

*McCormack v. State,* 553 A.2d 566, 569 (Vt. 1988). Accordingly, the courts consistently award the plaintiff a new trial when a defendant has been improperly excluded from the first trial. *Williams v. Slade,* 431 F.2d at 608; *Buffett v. Vargas,* 914 P.2d at 1009-10; *Methodist Hospitals of Dallas v. Sullivan,* 714 S.W.2d 302, 303 (Tex. 1986).

There is some disagreement among the courts concerning whether the new trial should include all defendants or just the defendants who were not exonerated in the first trial. Some courts require that the new trial include all defendants, including those who were exonerated in the first trial. *See, e.g., Blake v. Mahaffey,* 350 N.E.2d at 884. Other courts have held that plaintiffs should not receive a second bite at the apple and that exonerated defendants should not be part of the second trial if a new trial is granted. *See, e.g., Buffett v. Vargas,* 914 P.2d at 1009-10; *Methodist Hosps. of Dallas v. Sullivan,* 714 S.W.2d at 303.

Our courts no longer view verdicts as unitary and may grant relief to one defendant without granting relief to the other defendants. *Brown & Sons Lumber Co. v. Sessler,* 128 Tenn. 665, 673-74, 163 S.W. 812, 814 (1914); *Bentley v. Hurxthal,* 40 Tenn. (3 Head) 378, 379-80 (1859); *Blue Bird Coaches, Inc. v. McGregor,* 14 Tenn. App. 23, 26 (1931). However, we must grant the relief that the law and the facts require when the trial court's error more probably than not affected the judgment or would result in prejudice to the judicial process. Tenn. R. App. P. 36.

Thus, if the summary dismissal of the claims against Dr. Totty was reversible error, I would award Mr. Samuelson a new trial against Dr. Totty and Dr. Holland, the only remaining defendant found to be at fault.[14] Assuming that the parties do not settle prior to trial, I would also find that Dr. Holland would be entitled to a credit for the damages he has already paid should the second trial result in a larger judgment against him. If the second trial results in a lower

---

[14]A jury has already found that Dr. McMurtry and the H.C.A. Health Services employees were not negligent. Mr. Samuelson is not entitled to a new trial against these defendants because their conduct is wholly separate from Dr. Totty's negligent conduct. In light of the jury's verdict in the first trial, neither Dr. Totty nor Mr. Samuelson would be prejudiced if Dr. McMurtry and H.C.A. Health Services did not participate in the second trial.

judgment against Dr. Holland, then Mr. Samuelson would be required to repay the difference between the judgment in the first trial and the judgment in the second trial.

## V.

Mr. Samuelson attempted to assert his claims against all potentially liable tortfeasors in one suit. He should not be prejudiced if the trial court erroneously prevented him from pursuing his claims against Dr. Totty. Mr. Samuelson and all the parties had a right to have liability determined and fault apportioned once and for all in one proceeding.

_____
WILLIAM C. KOCH, JR., JUDGE

-14-